CASE   08-C-1964

STATE OF WV EX REL DARRELL V.   vs.   CASHCALL, INC.,

KANAWHA

| LINE | DATE | ACTION |
|------|------|--------|
| 1 | 10/08/08 | # ISSUED SUM & 4 CPYS; BILLED STATE; CASE INFO SHEET; COMPLAINT W/EXH'S |
| 2 | | |
| 3 | 10/31/08 | MC PMT ON FILING FEE; RCT#436836; $145.00; ST OF WV |
| 4 | 11/03/08 | # LET FR SS DTD 10/29/08; SUM W/RET (10/9/08 SS) AS TO CASHCALL INC., W/RMR |
| 5 | | #### |
| 6 | 11/03/08 | # LET FR SS DTD 10/29/08; SUM W/RET (10/9/08 SS) AS TO J. PAUL REDDAM, CEO FOR CASHCALL INC., W/RMR |
| 7 | | #### |





EXHIBIT
A



# OFFICE OF THE SECRETARY OF STATE
## STATE OF WEST VIRGINIA

**Betty Ireland**
**Secretary of State**

Building 1, Suite 157-K
1900 Kanawha Blvd., East
Charleston, West Virginia 25305
Telephone: 304-558-6000
Toll Free: 866-SOS-VOTE
www.wvsos.com

# LEGAL NOTICE

Cathy Gatson, Circuit Clerk
Kanawha County Courthouse
111 Court Street
Charleston, WV 25301-2500

October 29, 2008

I am enclosing:

| | | | |
|---|---|---|---|
| _____ summons | | __1__ original |
| _____ notice | | _____ affidavit |
| ●____ order | | _____ answer |
| _____ petition | | _____ cross-claim |
| _____ motion | | _____ counterclaim |
| _____ interrogatories | | _____ request |
| _____ suggestions | | __1__ certified return receipt |
| _____ subpoena duces tecum | | _____ request for production |
| _____ summons and complaint | | _____ request for admissions |
| _____ summons returned from post office | | _____ no return from post office |
| _____ summons and amended complaint | | _____ notice of mechanic's lien |
| _____ 3rd party summons and complaint | | _____ suggestee execution |

which was served on the Secretary at the State Capitol in her capacity as your statutory attorney-in-fact. According to law, I have accepted service of process in the name and on behalf of CashCall, Inc..

08-C-1964



PS Form 3811, January 2005          Domestic Return Receipt

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel.
DARRELL V. McGRAW, JR.,
ATTORNEY GENERAL,

      Plaintiff,

v.                         CIVIL ACTION NO. 08-C-1964
                                         Bloom

CASHCALL, INC., and
J. PAUL REDDAM, in his capacity
as president and CEO of CashCall, Inc.

      Defendants.

### SUMMONS

To the above-named Defendant:     J. Paul Reddam, CEO and president of
                                  CashCall, Inc.
                                  17360 Brookhurst Street,
                                  Fountain Valley, California 92702

    IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Norman Googel, Petitioner's attorney, whose address is Post Office Box 1789, Charleston, West Virginia 25326-1789, an answer, including any related counterclaim you may have, to the complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you.  You are required to serve your answer within thirty (30) days after service of this Summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Dated 10/8/08

                                        Cathy S. Gatson
                                         Clerk of Court
                                         By: J. Stine



# OFFICE OF THE SECRETARY OF STATE
## STATE OF WEST VIRGINIA

**Betty Ireland**
**Secretary of State**

Building 1, Suite 157-K
1900 Kanawha Blvd., East
Charleston, West Virginia 25305
Telephone: 304-558-6000
Toll Free: 866-SOS-VOTE
www.wvsos.com

# LEGAL NOTICE

Cathy Gatson, Circuit Clerk
Kanawha County Courthouse
111 Court Street
Charleston, WV 25301-2500

October 29, 2008

I am enclosing:

| | | | |
|---|---|---|---|
| ____ | summons | __1__ | original |
| ____ | notice | ____ | affidavit |
| ● | order | ____ | answer |
| ____ | petition | ____ | cross-claim |
| ____ | motion | ____ | counterclaim |
| ____ | interrogatories | ____ | request |
| ____ | suggestions | __1__ | certified return receipt |
| ____ | subpoena duces tecum | ____ | request for production |
| ____ | summons and complaint | ____ | request for admissions |
| ____ | summons returned from post office | ____ | no return from post office |
| ____ | summons and amended complaint | ____ | notice of mechanic's lien |
| ____ | 3rd party summons and complaint | ____ | suggestee execution |

which was served on the Secretary at the State Capitol in her capacity as your statutory attorney-in-fact. According to law, I have accepted service of process in the name and on behalf of CashCall, Inc..

08-C-1964



4-5

PS Form 3811, January 2005          Domestic Return Receipt

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel.
DARRELL V. McGRAW, JR.,
ATTORNEY GENERAL,

       Plaintiff,

v.                              CIVIL ACTION NO. 08-C-1964
                                          Bloom

CASHCALL, INC., and
J. PAUL REDDAM, in his capacity
as president and CEO of CashCall, Inc.

       Defendants.

### SUMMONS

To the above-named Defendant:      CashCall, Inc.
                                17360 Brookhurst Street,
                                Fountain Valley, California 92702

      IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Norman Googel, Petitioner's attorney, whose address is Post Office Box 1789, Charleston, West Virginia 25326-1789, an answer, including any related counterclaim you may have, to the complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within thirty (30) days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Dated 10/8/08

                                    Cathy S. Watson
                                      Clerk of Court
                                      By J. Starr

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

STATE OF WEST VIRGINIA ex rel.
DARRELL V. McGRAW, JR.,
ATTORNEY GENERAL,

       **Plaintiff,**

v.

CASHCALL, INC., and
J. PAUL REDDAM, in his capacity as
president and CEO of CashCall, Inc.

       **Defendants.**

FILED

2008 OCT -8  AM 9: 30

CATHY S. GATSON, CLERK
KANAWHA CO. CIRCUIT COURT

CIVIL ACTION NO. 08-C-1964
Bloom

---

**COMPLAINT FOR INJUNCTION, CONSUMER
RESTITUTION, CIVIL PENALTIES, AND
OTHER APPROPRIATE RELIEF**

Plaintiff, the State of West Virginia ex rel. Darrell V. McGraw, Jr., Attorney General ("the State" or "Attorney General"), files this Complaint asking the Court to temporarily and permanently enjoin the above-named Defendants, CashCall, Inc.  and J. Paul Reddam (hereinafter collectively "CashCall" or "Defendants") from violating the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 et seq. or WVCCPA ("WVCCPA" or "the Act"), and other applicable consumer protection laws and regulations, and to enter a final order awarding the State all other appropriate relief as authorized by W. Va. Code § 46A-7-108.

## I. INTRODUCTION

1.    CashCall used celebrities like Gary Coleman to pitch usurious loans with interest rates up to 99% APR to already cash-strapped consumers.

2.    The loans, which required "no collateral - just your signature," were made to

consumers at their homes or on their personal computers in West Virginia over the Internet via CashCall's interactive web site.

3.      Because such loans are unlawful in West Virginia, CashCall engaged in a scheme with a bank chartered in South Dakota to cloak the loans in federal preemption in an attempt to circumvent West Virginia's usury and consumer protection laws.

4.      The few redacted documents that CashCall produced in response to the State's investigative subpoena disclose that CashCall's arrangement with the bank was a sham.

5.      CashCall, which admittedly markets and arranges the loans (also in violation of West Virginia's credit services organizations act), assumes all or a substantial portion of the risk and liability for the loans, except for the first three days before their required purchase by CashCall.  As such, CashCall is the de facto lender in these transactions.

6.      Although CashCall represents that it stopped making loans to West Virginia consumers in March, 2007, CashCall continues to vigorously collect from its unknown number of existing accounts.  After the consumers inevitably default, CashCall engages in a wide range of unlawful debt collection practices, including harassing the consumer over the telephone; disclosing the debts to third parties; and threatening to charge consumers for "field visits" to their places of employment.

7.      In this suit, the State seeks to unmask CashCall's unlawful scheme to avoid West Virginia's usury and other consumer protection laws, to permanently enjoin these activities, and to obtain restitution for all aggrieved consumers.

## II. PARTIES

8.      Darrell V. McGraw, Jr., the Attorney General of the State of West Virginia, is

2

authorized to bring this action on behalf of the State by W. Va. Code § 46A-7-108, W. Va. Code § 46A-7-109, W. Va. Code § 46A-7-110, and W. Va. Code § 46A-7-111.

9.      Cashcall is a California corporation that made or arranged loans at all times pertinent hereto over the Internet via an interactive web site to consumers who reside in various states, including consumers who reside in West Virginia.

10.      CashCall maintains a principal place of business at 17360 Brookhurst Street, Fountain Valley, California 92702.

11.      J. Paul Reddam is the founder, President & CEO of CashCall.

### III.  JURISDICTION AND VENUE

12.      This Court has jurisdiction to hear this matter pursuant to Article VIII, Section 6 of the West Virginia Constitution, W. Va. Code § 51-2-2, and W. Va. Code § 53-5-3.

13.      The State of West Virginia has specific personal jurisdiction over the conduct of CashCall and its principals arising from the company's practice of making loans in West Virginia consumers via its interactive web site.  See Zippo Manufacturing Company v. ZippoDotCom, Inc., 952 F.Supp 1119, 1124 (W.D. Pa. 1997).

14.      Venue is proper in this Court pursuant to W. Va. Code § 46A-7-114 and W. Va. Code § 56-1-1(a)(6).

### IV.  BACKGROUND AND APPLICABLE LAW

15.      The business activities of CashCall and its agents arising from consumer transactions are subject to the provisions set forth in the WVCCPA, which is regulated by the Attorney General pursuant to W. Va. Code § 46A-7-101 et seq.

16.      CashCall engaged in the extension of "credit" as that term is defined by

3

W. Va. Code §  46A-1-102(17).

17.     CashCall engaged in the practice of making "consumer loans" in the State of West Virginia as defined by W. Va. Code § 46A-7-115.

18.     West Virginia Code § 46A-7-115 requires any company making consumer loans in West Virginia to obtain a business registration certificate from the state tax department.

19.     CashCall is a "debt collector" as defined by W. Va. Code § 46A-2-122(d).

20.     The West Virginia Legislature created the Lending and Credit Rate Board ("Board"), W. Va. Code § 47A-1-1 et seq. and authorized the Board to prescribe maximum interest rates and charges on loans, credit sales or transactions.  A copy of the latest order issued by the Board, effective December 1, 1999, and still in effect today is attached hereto as Exhibit A and incorporated by reference herein.

21.     Loans to consumers in which the interest rate exceeds the maximum amount prescribed by the Board, 18% per annum, are "usurious" as defined by W. Va. Code § 47-6-6.

22.     When a person or company engages in the practice of making "usurious loans" as defined by W. Va. Code § 47-6-6, the loans are void as to all interest and, in addition, the consumer may recover "an amount equal to four times all interest agreed to be paid and charged and in any event a minimum of one hundred dollars."

23.     When a person or company engages in the business of making usurious loans in the State of West Virginia without a license, such loan contracts are void and unenforceable.

24.     The violation of West Virginia statutes pertaining to business registration

4

requirements, usury, or any other law intended to protect the public and foster fair and honest competition constitutes an unfair or deceptive act or practice as defined by the WVCCPA, W. Va. Code § 46A-6-104.

25.     Repeated and willful violations of the WVCCPA may subject the violator to civil penalties of up to $5,000.00 for each violation, in accordance with W. Va. Code § 46A-7-111(2).

## IV.  RELEVANT PERIOD OF TIME

26.     The relevant period of time for this civil action is the time when CashCall commenced the making, arranging, and collecting of loans in West Virginia up to and including the present and the future.

## IV.  STATEMENT OF FACTS

27.     CashCall engaged in the marketing, arranging, making, servicing, processing, and collection of loans to West Virginia consumers at all times pertinent hereto.

28.     All of CashCall's loans were made to consumers at their homes or on their personal computers in West Virginia over the Internet via CashCall's interactive website, www.cashcall.com.

29.     CashCall did not have a license to make loans in West Virginia at any time pertinent hereto.

30.     All of CashCall's loans charged interest rates in excess of the maximum allowable rate, 18%, authorized by the Board for the types of loans made by CashCall.

31.     CashCall's loans typically charged interest rates of up to 99%.

32.     The Attorney General commenced an investigation of CashCall in 2007 after receiving complaints disclosing that CashCall was engaging in the making, arranging, and

5

collecting of usurious loans to consumers.

33.    On August 3, 2007, the Attorney General issued an investigative subpoena ("Subpoena"), as authorized by W. Va. Code § 46A-7-104(1), compelling CashCall to produce certain documents and information to the Attorney General on or before September 21, 2007. A copy of the Subpoena is attached hereto as State's Exhibit B and incorporated by reference herein.

34.    At CashCall's request and upon mutual agreement of the parties, the date for compliance with the Subpoena was extended until October 22, 2007.

35.    By letter dated October 22, 2007, CashCall responded to the Attorney General's Subpoena. Copies of CashCall's explanatory letter of response and CashCall's actual response to the Subpoena are attached hereto as Exhibits C & D respectively, and incorporated by reference herein.

36.    In essence, CashCall asserted in its response that it is a marketing agent for a state chartered bank and, therefore, the Attorney General is wholly preempted by federal banking law from regulating or even investigating its activities in West Virginia.

37.    Notwithstanding its objections to the Attorney General's Subpoena, CashCall produced some public documents on file with the California Secretary of State and heavily redacted copies of contracts between CashCall and two state-chartered banks who allegedly provided initial funding of loans arranged by CashCall to consumers in various states.

38.    CashCall provided a contract called FIRST AMENDED AND RESTATED CONSUMER LOAN, MARKETING, ORIGINATION AND SALE AGREEMENT ("Agreement") entered into between CashCall and First Bank and Trust of Milbank,

formerly known as Community State Bank ("the Bank"), a state-chartered bank headquartered in Milbank, South Dakota. A copy of the Agreement is attached hereto as Exhibit E and incorporated by reference herein.

39.     The Agreement provides a general description of the Program as follows:

> [T]he Program shall consist of CashCall's marketing and solicitation of Loans to potential borrowers, with the Loans being underwritten and originated by Bank and subsequently sold to CashCall.

See Article II. General Program Description, Section 2.1, p. 4.

40.     The Agreement requires CashCall to purchase the loans within three days after origination:

> CashCall will buy, and Bank will sell, each Loan originated and disbursed by Bank   three (3) days after such Loan is originated and the funds are disbursed by the Bank. The purchase price for each Loan shall be equal to the outstanding balance due on each such Loan including all principal, interest, origination fees or other charges or sums owed by the borrower.

See Article VI. Loan Purchases by CashCall, Section 6.1, p. 9.

41.     The Agreement contains several sections that outlined the respective fees and financial arrangements between CashCall and the Bank. Unfortunately, all dollar amounts have been redacted such that the State cannot determine the true nature or extent of the risk by CashCall as opposed to the Bank in the loans to West Virginia consumers.  See generally Article VII, Competition, p. 10-12; Article IX, Settlement Reserve and Guarantee, p. 13-14; and Article XI, Miscellaneous, p. 25.

42.     The Agreement clarifies that CashCall is **not** an operating subsidiary of the Bank:

> Bank and CashCall agree they are independent contractors to each other in performing their respective obligations hereunder. Nothing in this Agreement or in the working relationship established and developed hereunder shall be deemed or is intended to be deemed, nor shall it cause Bank and CashCall

7

to be treated as partners, joint ventures, or otherwise as joint associates for profit.

See Article XI, Miscellaneous, Section 11.8, p. 24.

43.     As of the date of this Complaint, the Attorney General has received at least 18 complaints from West Virginia consumers alleging that CashCall has engaged in a wide range of abusive, harassing, oppressive, threatening, unfair, deceptive, unconscionable, and fraudulent credit and debt collection practices.  The following represents an illustrative sample of the complaints and pertinent documents produced by the complainants.

### Complaint of Phyllis Akers

44.     Phyllis Akers of Belington, West Virginia filed a complaint with the Attorney General against CashCall on August 23, 2007.

45.     Akers reported that CashCall collection agents called her cell phone "every couple minutes" and left voice mails that others had access to and in fact heard, disclosing her allegedly delinquent loan and personal account information including her social security number.

46.     Akers also reported receiving collection calls from CashCall "every 15 minutes" on August 9, 2007 and said the caller threatened her as well as her manager. She reported that CashCall continued to call her at work after she asked them to stop calling her at her place of employment.

47.     In response to her complaint, CashCall admitted that its records verified receipt of her request to stop calls at her place of employment on June 19, 2007 and that its collection agent "erroneously placed five calls to Mr. Akers' place of employment after this date."

**Complaint of Brenda K. Bayliss**

48.     Brenda K. Bayliss of Barboursville, West Virginia filed a complaint with the Attorney General against CashCall on November 21, 2007.

49.     In her complaint, Bayliss reported that CashCall faxed a collection letter captioned "**NOTICE OF FIELD VISIT**" to her place of employment at Cabell Huntington Hospital in Huntington, West Virginia.

50.     The fax was received in a general work area and its contents were viewed by at least two employees, Laura Grizzel and Kimberly Taylor, both registration clerks.

51.     The collection letter threatened that CashCall has sent a field representative to meet with Bayliss at her place of employment because of her failure to respond and that she would be assessed for the cost of this field visit as well as subsequent field visits, which may range from $55.00 to $150.00.

52.     CashCall never sent a field representative to Bayliss' place of employment nor did it intend to do so.

53.     CashCall's collection letter and the statements of Grizzel and Taylor who viewed its contents are attached hereto as Exhibits F, G, and H respectively, and incorporated by reference herein.

**Complaint of Edward L. Belcher**

54.     Edward L. Belcher of Charleston, West Virginia filed a complaint with the Attorney General against CashCall on July 11, 2008.

55.     Belcher received a **"Notice of Intent to Initiate Arbitration Claim,"** dated August 15, 2008, from CashCall threatening to commence arbitration unless he contacted CashCall to make arrangements to pay the debt within seven business days.

9

56.     Belcher also received a second "**Notice of Arbitration Proceedings**" dated August 21, 2008 from CashCall confirming that CashCall "shall initiate arbitration proceedings against you on your defaulted loan in 10 days unless we can resolve the matter before that time" (emphasis added).  Copies of the letters threatening arbitration are attached hereto as Exhibits I and J, respectively, and incorporated by reference herein.

57.     As of the date of this Complaint, CashCall has not initiated arbitration proceedings nor does it intend to do so.

### Complaint of Larry Frazier

58.     Larry Frazier of Huntington, West Virginia filed a complaint with the Attorney General against CashCall on May 28, 2008.

59.     In the complaint, Frazier further reported that CashCall was contacting third parties by telephone and disclosing his alleged debt, including calls to his elderly landlord.

60.     Frazier also received numerous collection letters, including a "**Notice of Arbitration Proceedings**" dated February 19, 2008, advising that CashCall "shall initiate arbitration proceedings against you on your defaulted loan in 10 days unless we can resolve the matter before that time" (emphasis added).

61.     As of the date of this Complaint, CashCall has continued to send additional collection letters, but has not initiated arbitration proceedings as previously threatened nor does it intend to do so.   A copy of the letter threatening to commence arbitration proceedings is attached hereto as Exhibit K and incorporated by reference herein.

### Complaint of Vonda K. Austin-Palmer

62.     Vonda K. Austin-Palmer of Montgomery, West Virginia, filed a complaint with the Attorney General against CashCall on July 27, 2007.

63.    In the complaint, and in the information she provided subsequent to her complaint, Austin-Palmer reported that CashCall sent her a letter dated February 1, 2008, threatening to initiate arbitration proceedings unless she settled the account within ten days.  To date, CashCall has not done so.

64.    Austin-Palmer also reported that CashCall contacted her by telephone repeatedly at work, threatened to come in person to her employment, threatened to garnish her wages without explaining that it cannot do so without a court order, and asked to speak to her administrative personnel about her.

### Complaint of Matthew S. Sigman

65.    Matthew S. Sigman of Huntington, West Virginia filed a complaint with the Attorney General against CashCall on October 1, 2007.  In the complaint, Sigman reported that he was called 29 times during a 20 day period in September, 2007.

66.    Sigman reported that on September 26, he was called four times in four minutes including two calls at work and two calls on his cell phone.

### Complaint of Douglas & Carol Steele

67.    Douglas and Carol Steele filed a complaint with the Attorney General against CashCall on January 23, 2008.   In their complaint, they reported that beginning approximately November 1, 2007, CashCall commenced making repeated harassing collection calls, as many as six to 10 per day.

68.    Ms. Steele reported receiving so many collection calls on her cell phone that her voice mail box was filled up, which caused her to miss three calls from her employer asking her to report for additional shifts at work.

69.    Ms. Steele also reported that a CashCall collection agent accused her of

fraud for obtaining loans without her husband's knowledge, which was not true.

70.    The Steeles also reported that CashCall made numerous collection calls to various third parties, including friends, relatives and persons they listed as "references" on their loan application, thereby harassing those parties and disclosing the alleged indebtedness to them.   CashCall responded that it contacted the third parties only when it was unable to reach the Steeles.  The Steeles had not moved nor had they changed their places of residence or employment since allegedly defaulting on the loan to CashCall.

### Complaint of Charles Woodward

71.    Charles Woodward of Ravenswood, West Virginia filed a complaint with the Attorney General against CashCall on June 3, 2008.   Mr. Woodward reported that CashCall collection agents contacted him everyday by telephone and continued to debit his account even after he asked that the debits be stopped.

### V. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### (Failure to Comply with Subpoena)

72.    The State reasserts each and every allegation in paragraphs 1 through 71 above as set forth fully herein.

73.    On August 30, 2007, the Attorney General issued a Subpoena to CashCall requiring that it produce the documents and information specified therein to the Attorney General initially by September 21, 2007.

74.    The deadline was extended until October 22, 2007 at the request of CashCall.

75.    As of the date of this Complaint, CashCall has failed to comply with the Subpoena except as stated herein above, in violation of W. Va. Code § 46A-7-104 and

W. Va. Code § 46A-6-104.

76.     The State is entitled to an order compelling full compliance with the Subpoena.

## SECOND CAUSE OF ACTION
### (Making Consumer Loans Without a License)

77.     The State reasserts each and every allegation in paragraphs 1 through 76 above as set forth fully herein.

78.     The relationship between CashCall and the Bank was a sham intended to circumvent the usury and consumer protection laws of West Virginia.

79.     CashCall was the de facto lender in all of the transactions with West Virginia consumers.

80.     CashCall made consumer loans to West Virginia consumers without a business registration certificate from the state tax department as required by W. Va. Code § 46A-7-115, in violation of W. Va. Code § 46A-7-115 and W. Va. Code § 46A-6-104.

## THIRD CAUSE OF ACTION
### (Making Usurious Loans)

81.     The State reasserts each and every allegation in paragraphs 1 through 80 above as set forth fully herein.

82.     The relationship between CashCall and the Bank was a sham intended to circumvent the usury and consumer protection laws of West Virginia.

83.     CashCall made loans to consumers in which the interest rates always exceeded the maximum amount prescribed by the Board for such loans, with interest rates ranging up to 99% APR.

84.     CashCall made "usurious" loans, in violation of W. Va. Code § 46A-6-104.

13

85.     Consumers who were victimized by CashCall's usurious loans are entitled to recover "an amount equal to four times all interest agreed to be paid and charged and in any event a minimum of one hundred dollars," as provided by W. Va. Code § 47-6-6.

**FOURTH CAUSE OF ACTION**
**(Obtaining Extensions of Credit or Providing**
**Advice or Assistance to Consumers with**
**Regard to Extensions of Credit**
**in Violation of WVCCPA)**

86.     The State reasserts each and every allegation in paragraphs 1 through 85 above as if set forth fully herein.

87.     The West Virginia Credit Services Organization Act ("CSO Act"), W. Va. Code § 46A-6C-2(a), defines a "credit services organization" as a person or company who provides, or represents that it can provide, the service of obtaining an extension of credit for a buyer or providing advice or assistance to a buyer with regard to obtaining an extension of credit.

88.     A person or company who meets the definition of a "credit services organization" must comply with the requirements of the CSO Act:

        (a)     by filing a registration statement with the Secretary of State before conducting business in the state, W. Va. Code § 46A-6C-5;

        (b)     by obtaining a surety bond or establish a surety account if it receives money or other valuable consideration prior to completing performance of all promised credit services, W. Va. Code § 46A-6C-3(1);

        (c)     by not engaging, directly or indirectly, in unfair or deceptive acts or practices in connection with the provision of credit services, W. Va. Code § 46A-6C-3(4);

14

(d)      by not advertising, or causing to be advertised, credit services without filing a registration statement with the Secretary of State, W. Va. Code § 46A-6C-3(6);

(e)      by providing the disclosure statement containing all of the terms and provisions required by W. Va. Code § 46A-6C-6 prior to entering into a contract for the provision of credit services with consumers;

(f)      by entering a contract with consumers for the provision of credit services that contains all of the terms and provisions required by W. Va. Code § 46A-6C-7, including notice of the consumer's unconditional right to cancel without penalty or obligation within three days after the contract is signed;

89.      CashCall engaged in the provision of credit services by arranging for extensions of credit or by giving advice or assistance with respect to obtaining extensions of credit for West Virginia consumers.

90.      CashCall did not register as a credit services organization with the secretary of state prior to the provision of credit services to West Virginia consumers, in violation of W. Va. Code § 46A-6C-5 and W. Va. Code § 46A-6-104.

91.      CashCall did not obtain a surety bond or establish a surety account with the secretary of state prior to the provision of credit services to West Virginia consumers, in violation of W. Va. Code § 46A-6C-4 and W. Va. Code § 46A-6-104.

92.      CashCall advertised, or caused to be advertised, credit services without filing a registration statement with the secretary of state, in violation of W. Va. Code § 46A-6C-3(6).

93.      CashCall engaged, directly or indirectly, in unfair or deceptive acts or

15

practices in connection with the sale of credit services, in violation of W. Va. Code § 46A-6C-3(4).

94.     CashCall failed to furnish consumers with the disclosure statement containing the terms and provisions required by the CSO Act prior to entering into a contract for the provision of credit services, in violation of W. Va. Code § 46A-6C-6 and W. Va. Code § 46A-6-104.

95.     CashCall failed to furnish consumers with a contract containing the form and terms required by the CSO Act, including the notice of cancellation as required by the CSO Act, in violation of W. Va. Code § 46A-6C-7 and W. Va. Code § 46A-6-104.

**FIFTH CAUSE OF ACTION**
**(Threatening Garnishment of Wages**
**Without Informing the Consumer that**
**There Must be in Effect a**
**Judicial Order Permitting Such Garnishment)**

96.     The State reasserts each and every allegation in paragraphs 1 through 95 above as if set forth fully herein.

97.     A debt collector shall not collect or attempt to collect an alleged debt by threatening garnishment of wages without informing the consumer that there must be in effect a judicial order permitting such garnishment before it may occur, W. Va. Code § 46A-2-124(e)(2).

98.     CashCall collected or attempted to collect alleged debts by threatening garnishment of wages without informing consumers that there must be in effect a judicial order before a consumer's wages may be garnished, in violation of W. Va. Code § 46A-2-124(e)(2) and W. Va. Code § 46A-6-104.

## SIXTH CAUSE OF ACTION
### (Threatening to Take Action Prohibited by the
### WVCCPA and Other Laws Regulating
### the Debt Collector's Conduct)

99.   The State reasserts each and every allegation in paragraphs 1 through 98 above as if set forth fully herein.

101.   No debt collector shall collect or attempt to collect an alleged debt by threatening to take action prohibited by the WVCCPA or other law regulating the debt collector's conduct, W. Va. Code  § 46A-2-124(f).

102.   CashCall collected and attempted to collect debts by threatening that it would commence arbitration proceedings within 10 days unless the consumer paid the debt when it did not do so and had no intention of doing so, in violation of W. Va. Code § 46A-2-124(f) and W. Va. Code § 46A-6-104.

## SEVENTH CAUSE OF ACTION
### (Harassing Consumers Repeatedly or
### Continually by Telephone)

103.   The State reasserts each and every allegation in paragraphs 1 through 102 above as if set forth fully herein.

104.   No debt collector shall unreasonably oppress or abuse consumers by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times, or at times know to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number, W. Va. Code § 46A-2-125(d).

105.   CashCall has unreasonably oppressed and abused consumers by causing their telephones to ring and engaging them in telephone conversations repeatedly or continuously at home, on their cell phones, and at their places of employment, with the

intent to annoy, abuse, oppress or threaten them in violation of W. Va. Code § 46A-2-125(d) and W. Va. Code § 46A-6-104.

## EIGHTH CAUSE OF ACTION
### (Unreasonable Publication of Information Relating to Alleged Indebtedness of Consumers)

106.   The State reasserts each and every allegation in paragraphs 1 through 105 above as if set forth fully herein.

107.   No debt collector shall unreasonably publicize information relating to any alleged indebtedness of consumers, W. Va. Code § 46A-2-126.

108.   CashCall has unreasonably publicized and disclosed information relating to alleged indebtedness by calling persons listed as references on loan applications, by calling other third parties, by calling consumers at their places of employment, and by faxing letters to consumers at their places of employment, all of which resulted in the actual disclosure of indebtedness to third parties, in violation of W. Va. Code § 46A-2-126(a),(b),(c) and (d) and W. Va. Code § 46A-6-104.

## NINTH CAUSE OF ACTION
### (Collecting, Attempting to Collect, or Representing that it May Collect a Debt Collector's Fee or Charge for Services Rendered)

109.   The State reasserts each and every allegation in paragraphs 1 through 108 above as if set forth fully herein.

110.   No debt collector shall  use unfair or unconscionable means to collect or attempt to collect alleged debts, W. Va. Code § 46A-2-128.

111.   CashCall collected, attempted to collect, or represented that it could collect a debt collector's fee for charges or services rendered by sending collection notices that threatened to make field visits to consumers at their places of employment and to charge

18

them a fee for that visit and for subsequent visits, as indicated by Exhibit F, *infra,* in violation of W. Va. Code § 46A-2-127(g), W. Va. Code § 46A-2-128(c), and (d).

### TENTH CAUSE OF ACTION
### (Unjustifiably Contacting Third Parties Under the Guise of Obtaining Location Information about Consumers)

112.    The State reasserts each and every allegation in paragraphs 1 through 111 above as if set forth fully herein.

113.    No debt collector shall use any fraudulent, deceptive, or misleading representation or means to collect or attempt to collect alleged debts or to obtain information concerning consumers, W. Va. Code § 46A-2-127.

114.    CashCall contacted supervisors, administrative personnel, or other third parties at consumers' places of employment under the guise of obtaining or verifying location information about the consumer when it knew that the consumers had not changed their residence or place of employment, in violation of W. Va. Code § 46A-2-127 and W. Va. Code § 46A-6-104.

## VI. PRAYER

WHEREFORE, the State respectfully prays that it be granted relief against CashCall as follows:

### Compliance with Subpoena

(a)    That the Court enter an Order at its first hearing compelling CashCall to fully comply with the State's investigative Subpoena by providing all documents and information, unredacted, as required by the schedule of documents therein.

### Temporary Relief

(b)    That the Court enter a temporary order as authorized by W. Va. Code

19

§ 46A-7-110 enjoining CashCall (i) to refrain from engaging in any debt collection activities in the State of West Virginia until further or final hearing in the above civil action; (ii) to return any payments it may receive from consumers during the pendency of this action; and (iii) to notify all consumer reporting agencies to which it has reported any information about any loans that it made or arranged to be made through others to delete all references to these accounts from the consumers' credit record.

### Permanent Relief

(c)     That the Court enter a <u>final order</u> finding that CashCall has violated the WVCCPA as alleged herein and permanently enjoining CashCall from violating the WVCCPA and other applicable consumer protection laws;

(d)     That the Court enter a <u>final order</u> finding that all consumers who are aggrieved as a result of CashCall's actions are entitled to restitution, consisting of a full refund of all payments made;

(e)     That the Court enter a Final Order awarding all consumers who are aggrieved as a result of CashCall's actions their actual damages and a penalty of up to $4,461.74 for each violation as authorized by W. Va. Code § 46A-5-101 and W. Va. Code § 46A-5-106, and "excess charges" as authorized by W. Va. Code § 47-6-6 and W. Va. Code § 46A-7-111(1);

(f)     That the Court enter a <u>final order</u> requiring that CashCall close all of its West Virginia collection accounts with a zero balance as provided by W. Va. Code § 46A-5-105 and send a notice to the three major consumer reporting agencies, including all check guarantee companies from which it acquired the alleged debts, stating that the accounts have been paid paid in full and directing that all references to the accounts be deleted from

the consumers' credit records;

(g)     That the Court enter a <u>final order</u> finding that CashCall has engaged in a course of repeated and willful violations of the WVCCPA as alleged in the causes of action set forth herein above and requiring CashCall to pay a civil penalty of up to $5,000.00 to the State for each such violation as authorized by W. Va. Code § 46A-7-111(2);

(h)     That the Court enter a <u>final order</u> as authorized by W. Va. Code § 46A-7-108 requiring that CashCall reimburse the State for all its attorney's fees and costs expended in connection with the investigation and litigation of this matter; and

(i)     That the Court enter an order awarding the State such other and further equitable relief as is proper and just arising from this matter.

Respectfully submitted,

STATE OF WEST VIRGINIA ex rel.
DARRELL V. McGRAW, JR.,
ATTORNEY GENERAL, Plaintiff

By Counsel

NORMAN GOOGEL (WV State Bar # 1438)
ASSISTANT ATTORNEY GENERAL
JILL L. MILES (WV State Bar # 4671)
DEPUTY ATTORNEY GENERAL
Consumer Protection/Antitrust Division
P.O. Box 1789
Charleston, WV  25326-1789
(304) 558-8986

21

## <u>VERIFICATION</u>

STATE OF WEST VIRGINIA,

COUNTY OF KANAWHA, TO-WIT:

I, NORMAN GOOGEL, ASSISTANT ATTORNEY GENERAL, being duly sworn, depose and say that I am the counsel of record for Plaintiff in the foregoing styled civil action; that I am familiar with the contents of the foregoing Complaint for Injunction, Consumer Restitution, Civil Penalties, and other Appropriate Relief; and that the facts and allegations contained therein are true, except such as are therein stated upon information and belief, and that as to such allegations I believe them to be true.

NORMAN GOOGEL (WV State Bar # 1438)
ASSISTANT ATTORNEY GENERAL

Taken, subscribed, and sworn to before me in the County and State aforesaid this

_____ day of October, 2008.

My commission expires _April 13, 2015_ .

NOTARY PUBLIC

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
ANGELA R. VICKERS
Office of the Attorney General
P.O. Box 1789
Charleston, WV 25326-1789
My Commission Expires April 13, 2015



## DIVISION OF BANKING

(304) 558-2294

Building #3, Room 311 • State Capitol Complex • 1900 Kanawha Blvd., East • Charleston, WV  25305-0240 • FAX: (304) 558-0442

## *WEST VIRGINIA LENDING AND CREDIT RATE BOARD*

### ORDER

As an alternative to the sales finance charge allowed by West Virginia Code §46A-3-103(3), with respect to a consumer credit sale made pursuant to a revolving charge account, if the billing cycle is monthly, a seller may contract for and receive a sales finance charge not exceeding one-twelfth of twenty-five percent on the unpaid principal balance.  If the billing cycle is not monthly, the maximum charge is that percentage which bears the same relation to the applicable monthly percentage as the number of days in the billing cycle bears to thirty.  A billing cycle is monthly if the billing statement dates are on the same day each month or do not vary by more than four days therefrom.

Under this alternative sales finance charge rate, no origination fee, points, investigation fees, or similar prepaid finance charges are permitted, unless the transaction is fully secured by real estate.

This Order is effective December 1, 1999 and, pursuant to West Virginia Code §47A-1-1(g), shall remain in full force and effect until such time as the Board meets and prescribes different maximum rates of interest and/or maximum finance charges.

### ORDER

As an alternative to the sales finance charge allowed by West Virginia Code §46A-3-101, with respect to a consumer credit sale made on a closed-end basis, a seller may contract for and receive a sales finance charge, calculated according to the actuarial method, which may not exceed twenty-five percent per annum.

This Order is effective December 1, 1999 and, pursuant to West Virginia Code §47A-1-1(g), shall remain in full force and effect until such time as the Board meets and prescribes different maximum rates of interest and/or maximum finance charges.

EXHIBIT
A

*The following rates, set by prior Orders of the Board effective December 1, 1996, remain unchanged and in full force and effect pursuant to WV Code 47A-1-1(g) until such time as the Board meets and prescribes different maximum rates of interest and/or maximum finance charges:*

## ORDER

As an alternative to any statutory rate, any person [which defined in West Virginia Code §31A-1-2(n) means "any individual, partnership, society, association, firm, institutions, company, public or private corporation, state, governmental agency, bureau, department, division or instrumentality, political subdivision, county court, municipality, trust, syndicate, estate or any other legal entity whatsoever, formed, created or existing under the laws of this State or any other jurisdiction"] may charge a maximum finance charge not exceeding eighteen percent per annum calculated according to the actuarial method, on all loans, credit sales or transactions, forbearance or similar transactions, regardless of purpose.

This Order is effective December 1, 1996 and, pursuant to West Virginia Code §47A-1-1(g), shall remain in full force and effect until such time as the Board meets and prescribes different maximum rates of interest and/or maximum finance charges.

## ORDER

As an alternative to the loan finance charge allowed by West Virginia Code §46A-3-106(3), with respect to a consumer loan made pursuant to a revolving loan account, if the billing cycle is monthly, a lender may contract for and receive a loan finance charge not exceeding one and one-half percent on the unpaid principal balance. If the billing cycle is not monthly, the maximum charge is that percentage which bears the same relation to the applicable monthly percentage as the number of days in the billing cycle bears to thirty. A billing cycle is monthly if the billing statement dates are on the same day each month or do not vary by more than four days therefrom.

Under this alternative revolving loan finance charge rate, no origination fee, points, investigation fees, or similar prepaid finance charges are permitted, unless the transaction is fully secured by real estate.

This Order is effective December 1, 1996 and, pursuant to West Virginia Code §47A-1-1(g), shall remain in full force and effect until such time as the Board meets and prescribes different maximum rates of interest and/or maximum finance charges

Sharon G. Bias, Chairperson
WV Lending and Credit Rate Board
October 5, 1999

BEFORE THE ATTORNEY GENERAL OF WEST VIRGINIA
STATE CAPITOL
CHARLESTON, WEST VIRGINIA

**SUBPOENA**

IN THE MATTER OF THE INVESTIGATION OF:

| | | |
|---|---|---|
| CashCall, Inc. | ) | SUBPOENA TO |
| d/b/a CashCall.com | ) | PRODUCE CERTAIN |
| 17360 Brookhurst Street | ) | RECORDS |
| Fountain Valley, CA 92708 | ) | |

IN THE NAME OF THE STATE OF WEST VIRGINIA:

| | | | |
|---|---|---|---|
| TO: | Daniel Baren | ) | |
| | General Counsel | ) | |
| | CashCall, Inc. | ) | SUBPOENA TO |
| | d/b/a CashCall.com | ) | PRODUCE CERTAIN |
| | 17360 Brookhurst Street | ) | RECORDS |
| | Fountain Valley, CA 92708 | ) | |

YOU ARE HEREBY COMMANDED to produce the documentary material in your possession, custody, or control described below for examination and copying on or before the 21st day of September, 2007, to Norman Googel, Assistant Attorney General, at the offices of the Attorney General's Consumer Protection Division, 812 Quarrier Street, 1st Floor, Charleston, West Virginia 25301-2617.

This subpoena is issued pursuant to W. Va. Code § 46A-7-104(1), and concerns an investigation into alleged unfair or deceptive acts or practices and other possible violations of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 et seq.

All information provided to the Office of the Attorney General pursuant to this subpoena shall be retained in a confidential manner consistent with the provisions of W. Va. Code § 46A-7-104(4) and shall not be made public except upon the commencement

EXHIBIT
B

of an action to enforce the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 et seq. or other law.

## INSTRUCTIONS

Compliance with this subpoena requires compliance with the following instructions:

1.     "CashCall.com" shall mean and refer collectively to CashCall, Inc., d/b/a CashCall.com, its Owner, President and/or CEO, and their successor(s), parent corporations, corporate subsidiaries, affiliates, and their officers, directors, partners, owners, employees, agents, servants, and independent contractors.

2.     The scope of this subpoena encompasses all the documents of CashCall.com, wherever situated, including those documents in the possession and control of CashCall.com's officers, directors, partners, owners, employees, agents, servants, and branch offices.

3.     If necessary, CashCall.com shall assist the designated representative(s) from the West Virginia Office of the Attorney General in locating the schedule of documents requested in this subpoena.

4.     In the event that CashCall.com refuses to produce any documents requested herein on grounds of privilege, CashCall.com shall identify such documents and disclose the grounds for such claim of privilege.

5.     The scope of this subpoena is the date that CashCall.com commenced making payday loans to any person residing in the State of West Virginia up to and including the date of full compliance with this subpoena, unless otherwise noted.

6.      For the purposes of responding to this subpoena, CashCall.com, is deemed to be "making payday loans" and must provide the documents requested if it is a marketer, leads generator, processing or servicing company, lender, or is involved in any capacity in a process that results in the making of payday loans to persons residing in West Virginia.

## DEFINITIONS

For the purpose of this subpoena the following definitions shall apply:

1.      "Document" has the same meaning as in Rule 34(a) of the West Virginia Rules of Civil Procedure and includes but is not limited to the original and all drafts of all written or graphic matter, however produced or reproduced of any kind or facsimiles, summaries, financial statements, diaries, communications, invoices, receipts, log books, e-mails, telegrams, ledgers, accounts, minutes, pamphlets, notes, interoffice communications, training materials, records of meetings, conferences and telephone or other conversations or communications.

2.      "You" or "your" shall have the same meaning as "CashCall.com" as indicated above in item 1 of the Instructions.

3.      As used herein, the word "pertaining" includes containing, alluding to, responding to, commenting upon, discussing, showing, disclosing, explaining, mentioning, analyzing, constituting, comprising, evidencing, setting forth, summarizing or characterizing, either directly or indirectly, in whole or in part.

4.      As used herein, the word "identify," "identified," or "identifying" shall mean, at a minimum, the name, address and telephone number of the individual or company. When referring to an individual, both home and work telephone numbers shall be provided.

3

5.     As used herein, "communication" means the transmission of information in any form, including in the form of acts, ideas, inquiries, or otherwise.

6.     As used herein, "person" means any natural person or any non-natural entity, including without limitation any corporation, trust, partnership, cooperative, joint venture, agent, contractor, consultant, and association.   The term also includes any groups or associations of persons.

7.     As used herein, the word "list" shall mean a written document or hard copy <u>and</u> a computer disk in Microsoft Excel or other mutually agreed upon format containing the requested information.

8.     As used herein, "payday loans" shall mean and include short-term loans or cash advances, typically for a period of approximately 14 days, based upon or secured by a present or post-dated check or by an agreement authorizing debits of amounts owed from the consumer's checking account. For purposes of your response to this subpoena, "payday loans" shall also mean and include loans secured by the title to a motor vehicle ("title loans") and any loans on which the amount of interest charged to the consumer exceeds 18% APR.

9.     As used herein, "West Virginia consumers" or "West Virginia accounts" shall refer or pertain to all consumers who resided in West Virginia at the time they obtained payday loans from CashCall.com or from any company with which CashCall.com has or had a contractual agreement pertaining to payday loans, including but not limited to, other payday lenders, marketers, leads generators, and servicing and processing companies.

10.     As used herein, "advertisement" means the publication, dissemination or circulation of any matter orally, in writing,  electronically, or by any means and in any media

4

whatsoever, including the internet, for the purpose of inducing any person to enter into any obligation, sign any contract, or acquire any interest in goods or services.

11.     As used herein, "delinquent accounts(s)" shall mean and include any account in which any scheduled payment was not received by the date due and, as a result, CashCall.com has characterized the account as past due, in default, or has charged-off or closed the account for the reason of non-payment.

## SCHEDULE OF DOCUMENTS

The following documents pertaining to West Virginia consumers and/or West Virginia accounts:

1.     A list identifying all West Virginia consumers who obtained payday loans from CashCall.com during the period covered by this subpoena, including, at a minimum, the date and principal amount of each loan and the interest and fees charged; the amount actually collected on each loan (itemizing the portions that represent interest or other fees); and the account balance currently owed, if any.

2.     A hard copy of all documents in your possession pertaining to each consumer that you identified in response to Item 1 above, including but not limited to, (i) the loan application; (ii) all communications between CashCall.com, the consumer, and any third parties whatsoever pertaining to the lead generation, processing, servicing, approval, making, or collection of the loan.

3.     A blank hard copy of all business forms, documents, letters or any communications used by CashCall.com at any time or in any manner whatsoever in connection with the leads generation, approval, making, processing, servicing or collection

of payday loans to West Virginia consumers along with an appropriate explanation of when, in what sequence, and under what circumstances each such document is used.

4.     A list identifying all West Virginia consumers who obtained payday loans from CashCall.com and whose accounts presently are or became delinquent, in default, charged-off or closed for reason of nonpayment ("delinquent accounts").

5.     All documents pertaining to the collection of each delinquent account you identified above, including, but not limited to, the following:

(a)     Records of all payments made on the account to CashCall.com, including, at a minimum, the date and the amount of each payday loan; the total amount actually collected on each payday loan (with an itemization of the amounts that represent interest or other fees); and the current balance presently owed.

(b)     Records of all communications, both written and oral, between CashCall.com and the consumer pertaining to collection of the account.

6.     Identify all consumer reporting agencies to whom CashCall.com reported any information whatsoever, including check guarantee companies, about all West Virginia accounts and, for each such account, produce all documents stating the nature of and the date of all such information it reported.

7.     Identify all collection agencies or third parties, including attorneys at law, to whom CashCall.com sold, assigned, or placed any West Virginia accounts for collection and provide all contracts or agreements between CashCall.com and each such outside debt collector pertaining to collection of the accounts.

8.      All documents pertaining to CashCall.com's policies and procedures pertaining to the making of payday loans, investigation of consumer complaints, and the collection of accounts, including, but not limited to, business operations manuals, written policies and procedures, and internal memoranda.

9.      All standard forms and notices used by CashCall.com for communication with West Virginia consumers for debt collection along with an appropriate explanation of when, in what sequence, and under what circumstances each form or notice is used.

10.     Documents pertaining to the training of CashCall.com employees in applicable law, both state (including the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101 et seq.) and federal (including the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and the Fair Credit Reporting Act, 15 U.S.C § 1681 et seq.), pertaining to debt collection activities, consumer reporting activities, and steps to be taken in the investigation and resolution of consumer complaints or disputes.

11.     Identify all present or former employees, including managerial and supervisory, who engaged in whole or in part in the making of payday loans or the collection of delinquent accounts during the period covered by the subpoena.

12.     All documents pertaining to CashCall.com's criteria for evaluating the creditworthiness of consumers or the determination to make a loan or to proceed in any capacity pertaining to a payday loan.

13.     Identify any outside persons or companies that assist CashCall.com in the evaluation of the creditworthiness of consumers or the determination to make the loan or to proceed in any capacity pertaining to a payday loan and provide all documents pertaining to the foregoing.

7

14.     All documents pertaining to any products or services other than payday loans, including other financial services products, sold by CashCall.com to West Virginia consumers and, if there are any, (i) provide a list identifying all outside companies with whom CashCall.com has a relationship with for the sale of such products or services and (ii) provide a copy of the contract or agreement between CashCall.com and each such company.

15.     A list identifying all persons whose CashCall.com delinquent accounts were closed or written off by reason of default <u>and</u> have been sued in court by CashCall.com or its agents or assignees for collection of the alleged debt.

16.     For the consumers identified in item number fifteen (15) above, describe all civil actions by providing the complete style of the case, including the civil action number, the name of the court where the case was filed, a copy of the complaint and/or answers and counterclaims, if any, and the final dispositional or latest substantive order or decree.

17.     A list identifying all West Virginia consumers who were criminally prosecuted by CashCall.com, or whose accounts were referred to law enforcement agencies for criminal prosecution by CashCall.com, as a result of a check dishonored for insufficient funds or any other conduct arising from a payday loan transaction with CashCall.com.

18.     Provide a chart, diagram, or other documents identifying all parent companies, corporate affiliates, or subsidiaries of CashCall.com.

19.     All business licenses, certificates of authority, charters, and any other licenses or authorizations allowing CashCall.com, or any of its parent companies, corporate affiliates, or subsidiaries to engage in business or collect debts in West Virginia, and in any other state

8

or jurisdiction, including applications and supporting documents filed to obtain the licenses and authorizations.

20.     All documents pertaining to or that identify the physical location of each office of CashCall.com during the period covered by the subpoena, and each address where CashCall.com receives mail, including (i) a copy of the lease for the physical location of each office; and (ii) a copy of the contract or agreement for each private mailbox or other locations where written or printed communications are received.

21.     The articles of incorporation, by-laws, charters, and any other documents pertaining to the creation, managment, operation, operating guidelines, objectives or mission of CashCall.com.

22.     All documents identifying the president and CEO, officers, directors, board members and any other person with an ownership interest in CashCall.com.

23.     All contracts or agreements of any type or nature whatsoever by CashCall.com and any other party pertaining to:

i.      the operation or administration of its website;

ii.     leads generation;

iii.    processing or servicing of accounts;

iv.     transmission of funds to consumers' accounts;

v.      debiting of funds from consumers' accounts;

vi.     the marketing of its products or services to consumers; and

vii.    the application for, making of, or collection of payday loans that describe the parties' respective roles and obligations, methods of operation, and distribution of expenses incurred and proceeds generated.

24.     Produce copies of all advertisements whatsoever that CashCall.com has published or that CashCall.com has caused to be published by others, pertaining to payday loans by CashCall.com, including advertisements published in print or electronic media (including the Internet), by newspapers, television or radio stations, or communicated in any manner or in any media whatsoever.

25.     For each such "advertisement" that you identified in response to item twenty-four (24) above (i) identify the person or company that created or designed the advertisement; (ii) identify the person or company that published the advertisement; and (iii) produce a copy of the contract or agreement between CashCall.com and each person or company that created or designed the advertisement and each person or company that published the advertisement, including any other documents that identify the amount paid by CashCall.com to each such person or company for any service pertaining to its advertisements.

26.     All communications of any type or nature between CashCall.com and the Federal Deposit Insurance Corporation ("FDIC"), the Federal Trade Commission ("FTC"), the Internal Revenue Service ("IRS"), and any other state or federal regulators whatsoever pertaining to the making, supervision or regulation of payday loans or other financial services products or the business practices of CashCall.com.

27.     Documents pertaining to all civil actions, including both private class action and individual suits, and any investigations or enforcement proceedings commenced by any state Attorney General's Office, the U.S. Department of Justice, the FDIC, the FTC, the IRS or any other state or federal law enforcement or regulatory agency, involving payday loans and/or the collection of consumer accounts by CashCall.com, including (i) the complaint or initial

pleading and all substantive pleadings or documents filed therein; and (ii) all dispositional orders, consent decrees, settlement agreements, assurances of discontinuance, or judgments of any type or nature whatsoever from the matter.

Given under my hand this ___ day of August, 2007.


DARRELL V. McGRAW, JR.
ATTORNEY GENERAL


By: _____
JILL L. MILES
DEPUTY ATTORNEY GENERAL
Consumer Protection/Antitrust Division

11

# Greenberg Traurig

Eric. N. Whitney
Tel. (214) 665-3652
Fax (214) 665-5952
ewhitney@gtlaw.com

OCT 2 3 2007

## *BY OVERNIGHT DELIVERY*

October 22, 2007

Mr. Norman Googel
Assistant Attorney General
State of West Virginia
812 Quarrier Street
Charleston, WV 25301

Re:   CashCall, Inc.'s Response to Investigative Subpoena of August 30, 2007

Dear Mr. Googel:

Accompanying this letter is the Response of CashCall, Inc. to the investigative subpoena issued by your office on August 30, 2007 (the "Subpoena"). Also enclosed are certain documents bearing identifying numbers "CashCall WVAG 000001-000086" that CashCall is making available in response to the Subpoena. By providing the enclosed Response and documents, CashCall does not waive, and expressly reserves, its objections to the investigation of CashCall by your office and the Subpoena.

As you know from our previous correspondence with your office, this firm serves as regulatory counsel to CashCall. In this letter, we wish to provide you with more detailed information regarding CashCall's organization and operation as a marketing agent to certain federally regulated banks, and the regulatory framework applicable to such institutions. More specifically, the legal model for the loans previously made to certain West Virginia residents is a bank-exportation model under federal law in which the loans are made by a state-chartered bank that is insured by the Federal Deposit Insurance Corporation ("FDIC") and subject to the related federal regulations. Once you have reviewed this information, we hope that you will conclude as we have that CashCall's activities that are the subject of your investigation are governed exclusively by these federal laws, which preempt the application of individual states' lender registration or usury statutes, including those forming the bases for the Subpoena.

Before this bank installment-loan program was initiated, the FDIC reviewed all aspects of the program's design, structure, safeguards, and soundness, including

ALBANY

AMSTERDAM

ATLANTA

BOCA RATON

BOSTON

BRUSSELS*

CHICAGO

DALLAS

DELAWARE

DENVER

FORT LAUDERDALE

HOUSTON

LAS VEGAS

LONDON*

LOS ANGELES

MIAMI

MILAN*

NEW JERSEY

NEW YORK

ORANGE COUNTY

ORLANDO

PHILADELPHIA

PHOENIX

ROME*

SACRAMENTO

SILICON VALLEY

TALLAHASSEE

TAMPA

TOKYO*

TYSONS CORNER

WASHINGTON, D.C.

WEST PALM BEACH

EXHIBIT
C

Mr. Norman Googel                                    October 22, 2007
Assistant Attorney General                           Page -- 2
State of West Virginia

---

prototype documents and procedures, and provided specific guidance and informal approval for this program.

At the outset, we wish to emphasize that CashCall and its lending banks are sensitive to concerns that have been expressed by some consumer advocacy groups, attorneys general and others regarding "payday loans" and "sub-prime mortgage loans." Those concerns, however, do not apply to the unsecured installment loans offered by the banks through CashCall. In fact, non-short term, installment loan programs such as these have been approved and encouraged by the FDIC, and the installment loans under this program are unsecured, range from $1,000 to $5,000, and are repaid over 42 to 84 months. The FDIC has clearly distinguished these long-term installment loan products from short-term payday loans. *See* FDIC, *Guidelines for Payday Lending* (FILS-14-2005). These installment loans meet the definition of an "alternative, longer-term credit product" as recommended by the FDIC. They are not "payday loans." We also should point out that CashCall's lending banks ceased originating loans under this program to West Virginia residents in March 2007, and have no current plans to resume originations under this program in West Virginia.

CashCall and its lending banks have developed the legal model for this loan program based upon what they consider a reasonable analysis of federal and state law. The objective is to rely upon the bank's federal powers and federal preemption so that neither the bank nor CashCall unnecessarily submits to state regulatory jurisdiction regarding this legal model. As you are aware, this model is commonly employed by federally regulated financial institutions with respect to a wide variety of financial products, including mortgage loans, revolving credit accounts, auto loans and others. We also note that in July 2006, CashCall reviewed its status with Ms. Kathy Lawson, legal counsel to the West Virginia Commission of Banking. Ms. Lawson concurred with our understanding that, under Section 46A-1-102 of the West Virginia Code, loans such as those that CashCall originates for its lending banks would not constitute "regulated consumer loans" subject to state regulation. Nevertheless, the Banks and CashCall continue to monitor developments in this area and are pleased to review questions that may arise from time to time with state regulators.

Mr. Norman Googel
Assistant Attorney General
State of West Virginia

October 22, 2007
Page -- 3

---

I.   **The Federal Statutes and Regulations Governing CashCall Preempt State Laws.**

    A.   **CashCall Operates as a Marketing Agent for State Chartered Banks Subject to Federal Regulation.**

CashCall is incorporated in California and has facilities located in Nevada and California. CashCall's corporate headquarters are located in Fountain Valley, California. CashCall has executed marketing, origination and sales agreements with First Bank & Trust, Milbank, South Dakota, and First Bank of Delaware (the "Banks"). Pursuant to its agreements with the Banks, CashCall acts as the Banks' marketing agent to market and originate loans made by the Banks in accordance with section 27 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C.A. §1831d, and the Bank Service Company Act, 12 U.S.C.A. §1861 *et seq.,* The Banks underwrite, approve and fund the loans, with CashCall managing the application process, the exchange of information and documents between borrowers and the Banks, and notification to the customer of loan approval. Importantly, the Banks review each proposed loan and make the decision whether to fund it, and the Banks fund approved loans directly to the customer's designated bank account. Neither the Banks nor CashCall has a physical presence, agents, or employees in West Virginia. Loans are marketed and originated solely by means of interstate commerce, implementing call-in procedures to centers in California or Nevada and e-commerce methods for signing and delivering loan documents.

    B.   **The Banks Are Subject to Federal Banking Regulations that Preempt State Laws.**

Federal law empowers state-chartered, FDIC-insured banks to export the interest rates of their home state, and matters material to the determination of that rate. 12 U.S.C.A. §1831d (West 2007). Federal law further empowers the bank to engage agents to perform activities authorized by federal law. 12 U.S.C.A. § 1867(c) (West 2007). These statutes expressly preempt state law. Specifically, Section 1831d(a) provides:

> if the applicable rate prescribed in this subsection exceeds the rate such State bank . . . would be permitted to charge in the absence of this subsection, such State bank . . . may, *notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section*, take, receive, reserve, and charge on any loan . . . interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank or such insured branch of a foreign

Mr. Norman Googel                                          October 22, 2007
Assistant Attorney General                                Page -- 4
State of West Virginia

---

bank is located or at the rate allowed by the laws of the State, territory, or
district where the bank is located, whichever may be greater.

12 U.S.C.A. § 1831d(a) (emphasis added).  The power of a state-chartered bank to export
interest rates to other states without regard to host state laws, as expressed in section 27
of the FDIA, was modeled after the nearly identical provision contained in section 85 of
the National Bank Act.   In fact, various courts have held that section 27 is to be
interpreted *in pari materia* with section 85 of the National Bank Act, and therefore state-
chartered banks have the same exportation authority as their national bank counterparts.
*Greenwood Trust Co. v. Mass*, 971 F.2d 818, 827 (1st Cir. 1992); *In re Cmty. Bank of N.
Virginia*, 418 F.3d 277 (3d Cir. 2005); *Discover Bank v. Vaden*, 489 F.3d 594 (4th Cir.
2007).

We believe federal law is clear that a bank is the true lender if the bank is the entity that
decides to make the loan, the bank uses its money to fund the loan, and the bank
disburses the loan proceeds.  *See* OCC Advisory Letter no. 822 (March 1998) (discussing
three non-ministerial functions that govern where a loan is "made:" The decision to
extend credit; the extension of credit itself; and the disbursal of loan proceeds); *Jenkins v.
First American Cash Advance of Georgia*, LLC, 313 F. Supp. 2d 1370, 1373 (S.D. Ga.
2004), *affirmed* 400 F.3d 868 (11th Cir. 2005) (rejecting a plaintiff's claim that a
marketing/servicing agent was the entity in control of the loans, reasoning that the out-of-
state bank set the credit scoring criteria, approved or refused applications, and funded the
loans); *see also*, Notices FDIC Gen. Counsel's Opinion No. 11, Interest Charges by
Interstate State Banks 63 Fed. Reg. at 27,286.  Other helpful authorities include: FDIC
Advisory Letter No. 11 (1998) (adopting OCC federal standard of where a loan is "made"
for purposes of 12 U.S.C.A. §1831d); *Cades v. H&R Block*, 43 F.3d 869 (4th Cir. 1994)
(held Delaware interest rates applied to national bank's refund anticipation loan, despite
face-to-face solicitation by bank's agent in South Carolina, since loan was approved in
and loan proceeds originated from Delaware office of national bank); *Jenkins v. First
American Cash Advance of Georgia, LLC*, 313 F.Supp.2d 1370 (S.D. Ga. 2004), *affirmed*
400 F.3d 868 (11th Cir. 2005) (held out-of-state bank located in South Dakota was "true"
lender of short-term payday loans rather than Georgia marketing/servicing agent since
bank approved the loans, funded the loans, set the credit scoring criteria for the loans,
accepted and deposited repayment checks).

## C.    CashCall is the Banks' Agent for the Making of the Subject Loans.

The Bank Service Company Act treats an agent's acts as the acts of the bank and requires
the agent to be supervised by the FDIC.  The section in the Bank Service Company Act

Mr. Norman Googel                                          October 22, 2007
Assistant Attorney General                                Page -- 5
State of West Virginia

---

(12 U.S.C.A. §1861-67) that deals with bank agents is section 1867(c), which reads as
follows:

> Services performed by contract or otherwise. Notwithstanding subsection
> (a) of this section, whenever a bank that is regularly examined by an
> appropriate Federal banking agency, or any subsidiary or affiliate of such a
> bank that is subject to examination by that agency, causes to be performed
> for itself, by contract or otherwise, any services authorized under this
> chapter, whether on or off its premises-- (1) such performance shall be
> subject to regulation and examination by such agency to the same extent *as
> if such services were being performed by the bank itself on its own
> premises*, and (2) the bank shall notify such agency of the existence of the
> service relationship within thirty days after the making of such service
> contract or the performance of the service, whichever occurs first.

12 U.S.C.A. § 1867(c)(1) (West 2007) (emphasis added).   Under the Bank Service
Company Act, CashCall is in the same conceptual role as a "borrowed" employee that the
bank might engage from "Administaff" or another staffing company as the bank's agent
to conduct various functions or activities of the bank in exercising its federal powers
(*e.g.*, bank tellers, a customer service representatives, or bank activities).

The courts are also clear on the ability of national banks to engage in lending activities
through agents without state law restriction.  *Easton v. Iowa*, 188 U.S. 220 (1903);
*SPGGC v. Ayotte*, 488 F.3d 525 (1st Cir. 2007); *State Farm Bank, F.S.B. v. Burke*, 445
F.Supp. 2d 207 (D. Conn. 2006) (federal savings banks).  Given the parity of section 27
and section 85, it follows that state-chartered banks can engage in lending activities
pursuant to section 27 without regard to host state restrictions.  *See also, Jenkins v. First
American Cash Advance of Georgia, LLC*, 313 F.Supp.2d 1370 (S.D.Ga. 2004), *aff'd* 400
F.3d 868 (11th Cir. 2005) (held out-of-state bank located in South Dakota was "true"
lender of short-term payday loans rather than marketing/servicing agent since bank
approved the loans, funded the loans, set the credit scoring criteria for the loans, accepted
and deposited repayment checks); *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207
S.W.3d 342 (Tex. 2006) (a party who assigns its contractual rights and duties to a third
party remains liable unless expressly or impliedly released by the other party to the
contract); RESTATEMENT (SECOND) ON CONTRACTS § 318(3) (unless the consumer agrees to
delegation of performance, the delegation does not effect a discharge of the delegating
business); FARNSWORTH ON CONTRACTS § 11.10 (3rd ed. 1999) (delegation does not relieve
the delegating party of its duty and responsibilities); 6 Am. Jur. 2d *Assignments* §166
(2005) (unless the consumer agrees otherwise, neither a delegation of the performance

Mr. Norman Googel                                      October 22, 2007
Assistant Attorney General                            Page -- 6
State of West Virginia

---

nor a contract to assume the duty made with the delegating business by the person delegated discharges any duty or liability of the delegating business).

### D.   CashCall Is Subject to the Same Federal Statutes and Regulations Applicable to the Banks, which Preempt State Laws.

The foregoing statutes make clear that the FDIA and FDIC regulations apply to CashCall as a contractual agent of the Banks, and that those regulations preempt state laws.  In addition to this express federal statutory language, Supreme Court and Fourth Circuit case law mandates the application of federal statutes and regulations to entities like CashCall that assist a regulated bank's operations.

The Fourth Circuit has held that the FDIA preempts state law usury claims asserted against an affiliate of a state chartered bank when the bank is the real party in interest. *Discover Bank v. Vaden*, 489 F.3d 594, 604 (4th Cir. 2007).  Discover Bank is a state chartered federally insured bank and issued a credit card to Vaden. *Id.* at 597.  DFS is the "servicing affiliate of Discover Bank." *Id.*  DFS markets and services the loan products and collects on accounts for Discover Bank. *Id.*  DFS sued Vaden to collect on unpaid credit card debt. *Id.*  Vaden brought counterclaims, including breach of contract and state law claims for interest and other charges, against DFS and not Discover Bank. *Id.* The Fourth Circuit held that the bank and not its contractual affiliate was the real party in interest and thus the FDIA was implicated. *Id.* at 601-03.  Further, the Fourth Circuit "conclude[d] that Vaden's claims [were] completely preempted by the FDIA." *Id.* at 606. Thus, under *Vaden*, state court usury claims alleged against a bank's agent are completely preempted by the FDIA, because the real party in interest is the bank, even if another party is named. *See id.* at 608.

The Fourth Circuit recently reiterated its *Vaden* ruling in *Kucan*, a case involving a contractual agent of a bank. *Republic Bank & Trust Co. v. Kucan*, No. 05-1638, 2007 WL 2376927, at *1 (4th Cir. Aug. 21, 2007 ).  Plaintiffs brought a class action lawsuit against Advance America for violation of North Carolina's usury laws. *Kucan*, 2007 WL 2376927, at *1.  Advance America was a "servicing and marketing agent" by contract for the lender, Republic Bank.  Republic Bank responded by bringing a claim in federal court claiming federal question jurisdiction asserting that "the borrowers' usury claims were completely preempted by the [FDIA]." *Kucan*, 2007 WL 2376927 at *1.  Although the Fourth Circuit could not make a determination based on an incomplete record, it reiterated its ruling from *Vaden* that "usury claims against state-chartered banks are completely preempted by the FDIA, and that such claims that are nominally asserted against a non-bank are preempted if a state-chartered bank in fact is the real subject of the claims asserted by the plaintiffs." *Kucan*, 2007 WL 2376927 at *4.  Courts have applied

Mr. Norman Googel　　　　　　　　　　　　　　October 22, 2007
Assistant Attorney General　　　　　　　　　　Page -- 7
State of West Virginia

these same principles in cases involving the National Bank Act (NBA), the ancestor statute for the FDIA.

The Supreme Court has confirmed that the NBA and its regulations applied to a bank's operating subsidiary in *Watters*.[1] *Watters v. Wachovia Bank, N.A.*, 127 S. Ct. 1559, 1564 (2007). The bank and its subsidiary brought a suit for declaratory and injunctive relief against a Michigan commissioner to prohibit enforcement of the state laws against the bank's subsidiary. *Id.* at 1565. The state official "argued that, because [the bank's subsidiary] was not itself a national bank, the challenged Michigan controls were applicable and were not preempted." *Id.* at 1566. The Court disagreed and held that the NBA "protect[s] from state hindrance a national bank's engagement in the 'business of banking' whether conducted by the bank itself or by an operating subsidiary, empowered to do only what the bank itself could do." *Id.* at 1572. The Court reasoned that "just as a regulation would significantly burden mortgage lending when engaged in by national banks . . . so too would those state controls interfere with that same activity when engaged in by an operating subsidiary." *Id.* at 1570. To determine "whether state law hampers the federally permitted activities of a national bank, [the Court] focus[es] on the exercise of a national bank's *powers*, not on its corporate structure." *Id.*

The concept of using other entities as "resources" was further addressed in *SPGGC, LLC v. Ayotte*, 488 F.3d 525 (1st Cir. 2007). In that case, the First Circuit, quoting from *Watters*, emphasizes that a state may not restrict a national bank's use of outside resources. *Ayotte* held that questions of preemption should focus not on *whom* the state law regulates, but rather, what *activity* it regulates. Application of state law may not interfere with the power of a national bank to use agents to carry out authorized *activities*. *Ayotte*, 488 F.3d at 532-3. "It would be contrary to the language and intent of the National Bank Act to allow states to avoid preemption of their statutes simply by

---

[1] The FDIA is patterned after the National Bank Act (NBA). Notices FDIC Gen. Counsel's Opinion No. 11, Interest Charges by Interstate State Banks 63 Fed. Reg. at 27,282. "[S]ection 1831d is . . . construed in pari materia" with section 85 of the National Banking Act. Notices FDIC Gen. Counsel's Opinion No. 11, Interest Charges by Interstate State Banks 63 Fed. Reg. at 27,282. Courts recognize that "[w]hen Congress borrows language from one statute and incorporates it into a second statute, the language of the two acts ordinarily should be interpreted the same way." *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 295-96 (3d Cir. 2005). The Fourth Circuit has recognized this connection between the statutes. *See Discover Bank v. Vaden*, 489 F.3d 594, 604 (4th Cir. 2007) ("The Supreme Court has addressed the issue within the context of the National Bank Act . . . which is to national banks as section 27 of the FDIA is to state-chartered banks.").

Mr. Norman Googel                                    October 22, 2007
Assistant Attorney General                           Page -- 8
State of West Virginia

enacting laws that prohibited non-bank firms from providing national banks with the resources to carry out their banking activities." *Ayotte*, 488 F.3d at 533.

These authorities conclusively establish that federal law is applicable to CashCall, even though it is not itself a bank. And just as in *Watters*, *Vaden*, and *Ayotte*, the federal law applicable to CashCall preempts state law.

> **E.    The Specific State Laws on Which the Investigative Subpoena is Based Are Preempted.**

The Attorney General is asserting investigatory powers over CashCall for specific alleged violations of the West Virginia Consumer Credit and Protection Act. Letter from Norman Googel, Assistant Attorney General, West Virginia Office of the Attorney General, to Daniel Harry Baren, General Counsel, CashCall, Inc. 3 (June 7, 2007). Specifically, the Attorney General alleges that:

- CashCall "is engaging in the business of making consumer loans in the State of West Virginia without having filed a notification with the state tax department within 30 days after commencing business in this state . . . in violation of W. Va. Code § 46A-6-104."

- CashCall "is charging an interest rate in excess of 18% per annum" and thus is "making usurious loans as defined by W. Va. Code § 47-6-6" which is also a violation of W. Va. Code § 46A-6-104.

> *Id.*

These allegations specifically concern the making of consumer loans in West Virginia and the interest rate applicable to those loans. As such, they are specifically directed at the lending function and decisions of the Banks. The FDIA and its accompanying regulations preempt West Virginia law in at least three ways.

> **1.    Express Preemption**

Express preemption operates to prohibit West Virginia's enforcement of its lender registration and usury laws against CashCall. Express preemption occurs when there is explicit preemption language in the text of the federal law. *Fid. Fed. Sav. & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 152 (1982). Section 1831d expressly provides the interest rates the Banks are permitted to charge "notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section." § 1831d(a). This

Mr. Norman Googel                                              October 22, 2007
Assistant Attorney General                                    Page -- 9
State of West Virginia

---

language expressly preempts state law. *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 295 (3d Cir. 2005). Courts recognize that "[t]o the extent that a law or regulation enacted in the borrower's home state purposes to inhibit the bank's choice of an interest term under [section 1831d, the FDIA] expressly preempts the state law's operation." *Greenwood Trust Co. v. Massachusetts*, 971 F.2d 818, 827 (1st Cir. 1992).

### 2.  Conflict Preemption

Even without express preemption, conflict preemption operates to preempt West Virginia law. Conflict preemption may occur where the "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *De La Cuesta*, 458 U.S. at 153 (internal quotation marks and citations omitted). The purpose of section 1831d of the FDIA was "to strike a competitive balance between state and national lending institutions by giving them equal power in charging interest rates. Allowing state banks to charge the same or similar fees in connection with the extension and maintenance of credit as national banks are allowed to charge ensures parity between the two types of institutions." *Greenwood Trust Co.*, 971 F.2d at 830. Applying West Virginia's 18% interest rate limitation to the Banks and CashCall would frustrate the purpose of section 1831d, because the Banks would lose the competitive power Congress intended to provide them. West Virginia's usury law is a direct obstacle to Congress' purpose, and thus conflict preemption operates to preempt West Virginia's law.

### 3.  Complete Preemption

Finally, complete preemption operates to preempt West Virginia's law and investigation. Complete preemption occurs where "a federal cause of action completely supplanted a state law cause of action, and thus converts the state claim into a federal claim." *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 531 n.4 (1st Cir. 2007). It "allows a plaintiff to bring a previously state-law claim into federal court under federal question jurisdiction." *Id.*; *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003); *Lontz v. Tharp*, 413 F.3d 435, 438 (4th Cir. 2005). Section 1831d of the FDIA "completely preempts any state law attempting to limit the amount of interest and fees a federally insured-state chartered bank can charge." *In re Cmty. Bank of N. Virginia*, 418 F.3d at 295; *see also Vaden*, 489 F.3d at 606-07 (finding usury claims where real party in interest is state-chartered, federally insured bank completely preempted by the FDIA); *Kucan*, 2007 WL 23769227 at *4 ("*Vaden II* thus establishes that usury claims against state-chartered banks are completely preempted by the FDIA, and that such claims that are nominally asserted against a non-bank are preempted if a state-chartered bank in fact is the real subject of the claims asserted by the plaintiffs."); *Jenkins v. First Am.Cash Advance of Georgia, LLC*, 400 F.3d 868, 873 n.3 (11th Cir. 2005) ("In actions against national banks for usury, [§§

Mr. Norman Googel                                October 22, 2007
Assistant Attorney General                       Page -- 10
State of West Virginia

85 and 86] supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state law.   Because §§ 85 and 86 provide the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim of usury against a national bank.").   Complete preemption operates in this instance to preempt West Virginia laws, because these laws would limit the amount of interest and fees the Banks may charge.

**II.     West Virginia Law Does Not Authorize This Investigation.**

     **A.     The West Virginia Statutes Expressly Exempt Federally-regulated Banks and Loans.**

The West Virginia Consumer Credit and Protection Act exempts from its licensing requirements a "supervised financial institution" W. VA. CODE §46A-4-102(2).    A "supervised financial institution" is "any organization, corporation or person, other than an insurance company or other organization primarily engaged in an insurance business, which is required under state law to register or obtain a license from the Commissioner of Banking before conducting business in this state, or which is authorized under federal law to make consumer loans without a license from the state Commissioner of Banking, provided such loans are subject to supervision and examination by an official or agency of the United States." W. VA. CODE §46A-4-102(48).

Further, the definition of a regulated consumer loan under the statute includes an exception for federally preempted consumer loans.  W. VA. CODE 46A-1-102(38).   A "regulated consumer loan" is "a consumer loan, including a loan made pursuant to a revolving loan account, in which the rate of the loan finance charge exceeds eighteen percent per year as determined according to the actuarial method, *except where the loan qualifies for a federal law preemption from state interest rate limitations, including federal law bank parity provisions, or where the lender is specifically permitted by state law other than article four of this chapter to make the loan at that rate without the requirement the lender hold a regulated consumer lender license.*" W. VA. CODE 46A-1-102(38) (emphasis added).

As discussed above, CashCall and the Banks are supervised financial institutions, subject to supervision and examination by the FDIC, and loans made by the Banks in this program are exempt from state interest rate limitations, under 12 U.S.C.A. §1831d. Therefore, loans under this program do not meet the definition of "regulated consumer loan" in West Virginia.

Mr. Norman Googel                                   October 22, 2007
Assistant Attorney General                          Page -- 11
State of West Virginia

---

**B.    In the Absence of any Potential State Law Violation, Probable Cause for an Investigation Cannot Exist.**

Section 46A-7-104(1) of the West Virginia Code states that "[i]f the attorney general has probable cause to believe that a person has engaged in an act which is subject to action by the attorney general, he may, and shall upon request of the commissioner, make an investigation . . . ."  W. VA. CODE ANN. § 46A-7-104(1) (West 2007).  Probable cause requires "facts and circumstances sufficiently cogent and persuasive to induce a prudent and cautious man, acting in good faith and from justifiable motives, to believe the accused guilty."  56 W. Va. Op. Atty. Gen. 358, *available at* 1976 WL 178203 (internal quote marks omitted).  A prudent and cautious man, acting in good faith and from justifiable motives, would not believe that CashCall is guilty of violating West Virginia Code section 46A-6-104 and section 47-6-6, because federal law preempts these provisions and thus it is impossible for CashCall to violate them.  Therefore, we respectfully submit that the Attorney General lacks probable cause to conduct this investigation and to exercise jurisdiction over CashCall.

We hope that this information is helpful to you regarding this matter.  As mentioned above, we have enclosed with CashCall's response certain documents reflecting some of the factual matters described in this letter.  Once you have had a chance to review these materials, we would welcome the opportunity to further discuss this matter with you, either by telephone or in person, and look forward to working with you to satisfy any remaining questions or concerns.

Sincerely,

Eric N. Whitney

cc:    Daniel Baren, General Counsel
       CashCall, Inc.

       Bruce M. Jacobs, Esq.
       Debra L. Hovatter, Esq.
       Spilman Thomas & Battle, PLLC

       J. Scott Sheehan, Esq.
       Greenberg Traurig, LLP

DAL 76427850v10 10/22/2007