BEFORE THE ATTORNEY GENERAL OF WEST VIRGINIA
STATE CAPITOL
CHARLESTON, WEST VIRGINIA

IN THE MATTER OF THE INVESTIGATION OF:

| | |
|---|---|
| CashCall, Inc. | § |
| d/b/a CashCall.com | § |
| 17360 Brookhurst Street | § |
| Fountain Valley, CA 92708 | § |

CASHCALL, INC.'S RESPONSE AND OBJECTIONS TO
SUBPOENA TO PRODUCE CERTAIN RECORDS

TO:   STATE OF WEST VIRGINIA
      OFFICE OF THE ATTORNEY GENERAL
      812 QUARRIER STREET
      CHARLESTON, WV 25301
      ATTN: NORMAN GOOGEL, ASSISTANT ATTORNEY GENERAL

CashCall, Inc., through its undersigned counsel and reserving all rights, provides the

following Response and Objections to the Subpoena to Produce Certain Records issued by the

Office of the Attorney General of West Virginia on August 30, 2007 (the "Subpoena").

I.

INTRODUCTORY STATEMENT

CashCall, Inc. ("CashCall") is a California-based specialty finance company that operates

as a marketing and origination agent for state-chartered banks that are insured by and subject to

regulation by the Federal Deposit Insurance Corporation ("FDIC"). CashCall has served as an

agent for First Bank & Trust, Milbank, South Dakota ("FBT"), and First Bank of Delaware

RESPONSE & OBJECTIONS TO SUBPOENA
TO PRODUCE CERTAIN RECORDS

EXHIBIT
D

Page 1

("FBD") (the "Banks"). In its capacity as the Banks' agent, CashCall assists them in marketing and originating non-short term, unsecured installment loans made by the Banks in accordance with Section 27 of the Federal Deposit Insurance Act ("FIDA"), 12 U.S.C.A. §1831d, and the Bank Service Company Act, 12 U.S.C.A. §1861, *et seq.* The Banks ceased making loans to residents of West Virginia under this program in March 2007, and have no current plans to resume origination of new loans to West Virginia residents under this program.

Before this bank installment-loan program was initiated, the FDIC reviewed all aspects of the program's design, structure, safeguards, and soundness, including prototype documents and procedures, and provided specific guidance and informal approval of this program. It also is important to note that these loans are not "payday loans." The installment loans under this program are unsecured, range from $1,000 to $5,000, and are repaid over 42 to 84 months. Non-short term, installment loan programs such as these have been approved and encouraged by the FDIC, which has clearly distinguished this long-term installment loan product from short-term payday loans. *See* FDIC, *Guidelines for Payday Lending* (FIL-14-2005). These installment loans meet the definition of an "alternative, longer-term credit product" as recommended by the FDIC. Moreover, these loans are not "secured" by post-dated checks or auto titles, are not required to be paid back within fourteen days, and do not have the other characteristics of a "payday loan."

Based on prior correspondence from the Office of the Attorney General for the State of West Virginia ("AG"), the apparent bases for AG's investigation of CashCall and the corresponding investigative subpoena are AG's contentions that (i) CashCall is required to have filed a notification with the state tax department pursuant to W. Va. Code §46A-7-115; (ii) CashCall is charging an interest rate in excess of the maximum rate allowed for consumer loans by the West Virginia Lending and Credit Rate Board and in violation of W. Va. Code §47-6-6;

RESPONSE & OBJECTIONS TO SUBPOENA
TO PRODUCE CERTAIN RECORDS

and (iii) the foregoing conduct constitutes unfair or deceptive acts or practices in violation of W. Va. Code §46A-6-104.  See June 7, 2007, Letter from AG to CashCall, Inc.

For the reasons more fully set forth in the letter accompanying this response, which is incorporated herein by reference, and as previously communicated to AG by CashCall, the federal banking laws that govern the Banks and, by extension, CashCall, preempt state registration and usury laws.  The FIDA, the BSCA and recent Supreme Court and Fourth Circuit decisions confirm a bank's "powers" to export loans and to use non-bank firms as "resources" to carry out those banks' powers.  As an agent of an FDIC-insured depository institution, CashCall is subject to the extensive regulation by the FDIC pursuant to the BSCA, which treats an agent's activities "as if such services were being performed by the bank itself on its own premises."  12 U.S.C.A. §1867(c).  These regulations and holdings also confirm the pre-emptive effect of these federal regulations on state usury and registration laws.  As such, CashCall and the Banks are not required to file a notification with the state tax department and are permitted to export to borrowers in other states, including West Virginia, the home state interest rates available to the Banks.

CashCall notes that the definition of "Regulated Consumer Loan" in the sections of the West Virginia Code cited by the AG is consistent with this regulatory scheme and preemption, exempting from state regulation loans "qualif[ying] for federal law preemption from state interest rate limitations, including federal law bank parity provisions..."  W. Va. Code §46A-1-102.  This is also consistent with an opinion provided by the West Virginia Division of Banking that CashCall is not subject to state licensing because its loans are not Regulated Consumer Loans.  *See* July 28, 2006, e-mail correspondence from K. Lawson, Legal Counsel, WV Division of Banking.

In response to the AG's investigative subpoena, and reserving all rights, CashCall will provide the AG with certain documents specified herein, solely to demonstrate the federal law preemption of the subject bank installment loan transactions with West Virgnia residents. CashCall also is willing to cooperate with AG to respond to any further questions or concerns relating to that issue.

## II.

## GENERAL OBJECTIONS

1.      CashCall objects to the Subpoena because federal law preempts the state laws sought to be investigated or enforced by the AG.

2.      CashCall objects to the Subpoena because probable cause to believe that CashCall has engage in an act that is subject to action by the AG does not exist.

3.      CashCall objects to the Subpoena because CashCall has no physical presence, officers, employees or agents in West Virginia.

4.      CashCall objects to the Subpoena because CashCall is not doing business in West Virginia.

5.      CashCall objects to the Subpoena because CashCall is not subject to personal jurisdiction in West Virginia.

6.      CashCall objects to the Subpoena because the AG lacks standing to assert claims against CashCall.

7.      CashCall objects to the Subpoena because the AG has failed to satisfy the administrative and procedural requirements for issuance of an investigative subpoena under West Virginia law.

8.      CashCall objects to the extent the Subpoena and each of the requests therein are overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of

evidence that would be admissible in any subsequent proceeding.

9.    CashCall objects to the extent the Subpoena and each of the requests therein calls for the production of documents and information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, and other exemptions from discovery.

10.    CashCall objects to the extent the Subpoena and each of the requests therein calls for the production of documents and information containing confidential, proprietary and trade secret information of CashCall, and private or confidential information of third parties to whom CashCall owes a contractual, statutory or other duty of confidentiality or privacy, including but not limited to privacy obligations imposed by the Gramm-Leach-Bliley Act of 1999,  and/or W. Va. Code §31A-2A-1.

11.    CashCall objects to the definitions of "payday loans" and "making payday loans" in the Instructions to the Subpoena as misleading, inaccurate, inconsistent with applicable law and mischaracterizing loans marketed or originated by CashCall on behalf of federally regulated banks.

12.    CashCall objects to the Subpoena because CashCall does not make "payday loans" as commonly or appropriately defined.

13.    CashCall objects to the Subpoena and each request because the investigative subpoena issued by the Attorney General exceeds statutory authority and, therefore, is void.  The only provision that authorizes the Attorney General to issue an administrative subpoena is section 46A-7-104 of the West Virginia Code.  Section 46A-7-104 states that "[i]f the attorney general has probable cause to believe that a person has engaged in an act which is subject to action by the attorney general, he may . . . make an investigation to determine if the act has been committed and, to the extent necessary for this purpose, may . . . require the production of any

matter which is relevant to the investigation . . . ."  W. Va. Code § 46A-7-104.  A subpoena can only be issued for the sole purpose of determining whether the other party is engaged in an "act" which is within the Attorney General's scope of action.  The information sought by the Attorney General in the Subpoena is not relevant or necessary to determine whether any alleged act violated the WVCCPA nor does the requested information relate to any reasonable probable cause that can be asserted by the Attorney General regarding an alleged violation of the Act.

14.     CashCall objects to the Subpoena and each request because the Attorney General previously has stated its conclusion that CashCall has violated the law; therefore, any investigation is superfluous and unauthorized by section 46A-7-104 of the West Virginia Code.

15.     CashCall objects to the Subpoena and each request to the extent that the scope of the requests exceeds the scope of the statutory provisions and violations of law alleged by the Attorney General and, therefore, exceeds the scope of any investigation authorized by section 46A-7-104 of the West Virginia Code.

### III.

### OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS

**REQUEST 1.** A list identifying all West Virginia consumers who obtained payday loans from CashCall.com during the period covered by this subpoena, including, at a minimum, the date and principal amount of each loan and the interest and fees charged; the amount actually collected on each loan (itemizing the portions that represent interest or other fees); and the account balance currently owed, if any.

**RESPONSE TO REQUEST 1:**

In addition to the General Objections set forth above, CashCall objects to this request as not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding.  CashCall further objects to this request because CashCall does not offer "payday loans" as that term is defined by applicable law.  CashCall further objects to this request as directing CashCall to create documents and therefore exceeding the scope of an authorized subpoena.  CashCall further objects to this request as calling for disclosure of confidential and private information protected by law, including but not limited to the Gramm-Leach-Bliley Act and W. Va. Code §31A-2A-1.

**REQUEST 2.** A hard copy-of all documents in your possession pertaining to each consumer that you identified in response to Item 1 above. including but not limited to, (i) the loan application; (ii) all communications between CashCall.com, the consumer, and any third parties whatsoever pertaining to the lead generation, processing, servicing, approval, making, or collection of the loan.

**RESPONSE TO REQUEST 2:**

In addition to the General Objections set forth above, CashCall objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General.  CashCall further objects to this request because CashCall does not offer "payday loans" as that term is defined by applicable law.  CashCall further objects to this request as calling for disclosure of confidential and private information protected by law, including but not limited to the Gramm-Leach-Bliley Act and W. Va. Code §31A-2A-1.  Subject to the objections set forth above and reserving all rights, CashCall will provide copies of the form(s) of loan application and agreement used in connection with loans made to residents of West Virgnia.

**REQUEST 3.** A blank hard copy of all business forms, documents, letters or any communications used by CashCall.com at any time or in any manner whatsoever in connection with the leads generation, approval, making, processing, servicing or collection of payday loans to West Virginia consumers along with an appropriate explanation of when, in what sequence, and under what circumstances each such document is used.

**RESPONSE TO REQUEST 3:**

In addition to the General Objections set forth above, CashCall objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General..  CashCall further objects to this request because CashCall does not offer "payday loans" as that term is defined by applicable law.  CashCall further objects to this request as directing CashCall to create documents and therefore exceeding the scope of an authorized subpoena.  Subject to the objections set forth above and reserving all rights, CashCall will provide copies of the form(s) of loan application and agreement used in connection with loans made to residents of West Virgnia.

**REQUEST 4.** A list identifying all West Virginia consumers who obtained payday loans from CashCall.com and whose accounts presently are or became delinquent, in default, charged- off or closed for reason of nonpayment ("delinquent accounts").

**RESPONSE TO REQUEST 4:**

In addition to the General Objections set forth above, CashCall objects to this request as not

reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General. CashCall further objects to this request because CashCall does not offer "payday loans" as that term is defined by applicable law. CashCall further objects to this request as calling for CashCall to create documents and therefore exceeding the scope of an authorized subpoena. CashCall further objects to this request as calling for disclosure of confidential and private information protected by law, including but not limited to the Gramm-Leach-Bliley Act and W. Va. Code §31A-2A-1.

**REQUEST 5.** All documents pertaining to the collection of each delinquent account you identified above, including, but not limited. to, the following:

(a)     Records of all payments made on the account to CashCall.com, including, at a minimum, the date and the amount of each payday loan; the total amount actually collected on each payday loan (with an itemization of the amounts that represent interest or other fees); and the current balance presently owed.

(b)     Records of all communications, both written and oral, between CashCall.com and the consumer pertaining to the collection of the account.

**RESPONSE TO REQUEST 5**

In addition to the General Objections set forth above, CashCall objects to this request as overly broad and not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General.  CashCall further objects to this request because CashCall does not offer "payday loans" as that term is defined by applicable law.  CashCall further objects to this request as calling for disclosure of confidential and private information protected by law, including but not limited to the Gramm-Leach-Bliley Act and W. Va. Code §31A-2A-1.

**REQUEST 6.** Identify all consumer reporting agencies to whom CashCall.com reported any information whatsoever, including check guarantee companies, about all West Virginia accounts and, for each such account, produce all documents stating the nature of and the date of all such information it reported.

**RESPONSE TO REQUEST 6:**

In addition to the General Objections set forth above, CashCall objects to this request as not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General. CashCall further objects to this request as calling for CashCall to create documents and therefore exceeding the scope of an authorized subpoena.  CashCall further objects to this request as calling for disclosure of confidential and private information protected by law, including but not limited to the Gramm-Leach-Bliley Act and W. Va. Code §31A-2A-1.

**REQUEST 7.** Identify all collection agencies or third parties, including attorneys at law, to whom CashCall.com sold, assigned, or placed any West Virginia accounts for collection <u>and</u> provide all contracts or agreements between CashCall.com and each such outside debt collector pertaining to collection of the accounts.

**RESPONSE TO REQUEST 7:**

In addition to the General Objections set forth above, CashCall objects to this request as not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General. CashCall further objects to this request as calling for CashCall to create documents and therefore exceeding the scope of an authorized subpoena.  CashCall further objects to this request as calling for disclosure of confidential and private information protected by law, including but not limited to attorney-client communications.

**REQUEST 8.** All documents pertaining to CashCall.com's policies and procedures pertaining to the making of payday loans, investigation of consumer complaints, and the collection of accounts, including, but not limited to business operations manuals, written policies and procedures, and internal memoranda.

**RESPONSE TO REQUEST 8:**

CashCall objects to this request because CashCall does not offer "payday loans" as that term is defined by applicable law.  CashCall objects to this request as not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General.  CashCall further objects to this request as calling for disclosure of confidential and private information protected by law.  Subject to the objections set forth above and reserving all rights, CashCall will provide redacted copies of the agreements pursuant to which it served as the agent of federally regulated banks for the marketing and origination of loans to residents of West Virgnia.

**REQUEST 9.** All standard forms and notices used by CashCall.com for communication with West Virginia consumers for debt collection along with an appropriate explanation of when, in what sequence, and under what circumstances each form or notice is used.

**RESPONSE TO REQUEST 9:**

CashCall objects to this request as not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General.  CashCall further objects to this request as calling for CashCall to create documents and therefore exceeding the scope of an authorized subpoena.

**REQUEST 10.**      Documents pertaining to the training of CashCall.com employees in applicable law, both state (including the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101 et seq. and federal (including the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and the Fair Credit Reporting Act., 15 U.S.C. § 1681 et seq.), pertaining to debt collection activities, consumer reporting activities, and steps to be taken in the investigation and resolution of Consumer complaints or disputes.

**RESPONSE TO REQUEST 10:**

In addition to the General Objections set forth above, CashCall objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General.  CashCall further objects to this request as calling for disclosure of confidential and private information protected by law, including but not limited to the attorney-client privilege.

**REQUEST 11.**      Identify all present or former employees, including managerial and supervisory, who engaged in whole or in part in the making of payday loans or the collection of delinquent accounts during the period covered by the subpoena.

**RESPONSE TO REQUEST 11:**

In addition to the General Objections set forth above, CashCall objects to this request as not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General. CashCall further objects to this request as calling for CashCall to create documents and therefore exceeding the scope of an authorized subpoena. CashCall further objects to this request because CashCall does not offer "payday loans" as that term is defined by applicable law and, in its capacity as the agent of certain federally regulated banks, does not make the lending decision. CashCall further objects to this request as calling for disclosure of confidential and private information protected by law.

**REQUEST 12.**      All documents pertaining to CashCall.com's criteria for evaluating the creditworthiness of consumers or the determination to make a loan or to proceed in any capacity pertaining to a payday loan.

**RESPONSE TO REQUEST 12:**

In addition to the General Objections set forth above, CashCall objects to this request as not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General. CashCall further objects to this request because CashCall does not offer "payday loans" as that

term is defined by applicable law and, in its capacity as the agent of certain federally regulated banks, does not make the lending decision. CashCall further objects to this request as calling for disclosure of confidential and private information protected by law.

**REQUEST 13.**      Identify any outside persons or companies that assist CashCall.com in the evaluation of the creditworthiness of consumers or the determination to make the loan or to proceed in any capacity pertaining to a payday loan and provide all documents pertaining to the foregoing.

**RESPONSE TO REQUEST 13:**

In addition to the General Objections set forth above, CashCall objects to this request as not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General. CashCall further objects to this request because CashCall does not offer "payday loans" as that term is defined by applicable law and, in its capacity as the agent of certain federally regulated banks, does not make the lending decision. CashCall further objects to this request as calling for CashCall to create documents and therefore exceeding the scope of an authorized subpoena. CashCall further objects to this request as calling for disclosure of confidential and private information protected by law.

**REQUEST 14.**      All documents pertaining to any products or services other than payday loans, including other financial services products, sold by CashCall.com, to West Virginia consumers and, if there are any, (i) provide a list identifying all outside companies with whom CashCall.com has a relationship with for the sale of such products or services and (ii) provide a copy of the contract or agreement between CashCall.com and each such company.

**RESPONSE TO REQUEST 14:**

CashCall objects to this request because CashCall does not offer "payday loans" as that term is defined by applicable law. CashCall objects to this request as not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding. CashCall further objects to this request as calling for CashCall to create documents and therefore exceeding the scope of an authorized subpoena. CashCall further objects to this request as calling for disclosure of confidential and private information protected by law. Subject to the objections set forth above and reserving all rights, CashCall will provide redacted copies of the agreements pursuant to which it served as the agent of federally regulated banks for the marketing and origination of loans to residents of West Virginia and states that such loans are the only products or services with which CashCall has had involvement in West Virginia.

**REQUEST 15.**      A list identifying all persons whose CashCall.com delinquent accounts were closed or written off by reason of default <u>and</u> have been -sued in court by CashCall.com or

its agents or assignees for collection of the alleged debt.

**RESPONSE TO REQUEST 15:**

In addition to the General Objections set forth above, CashCall objects to this request as not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General. CashCall further objects to this request as calling for CashCall to create documents and therefore exceeding the scope of an authorized subpoena.  Subject to the objections set forth above and reserving all rights, CashCall states that there are no borrowers meeting the criteria of this request.

**REQUEST 16.**      For the consumers identified in item number fifteen (15) above, describe all civil actions by providing the complete style of the case, including the civil action number, the name of the court where the case was filed, a copy of the complaint and/or answers and counterclaims, if any, and the final disposition or latest substantive order or-decree.

**RESPONSE TO REQUEST 16:**

In addition to the General Objections set forth above, CashCall objects to this request as not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General. CashCall further objects to this request as calling for CashCall to create documents and therefore exceeding the scope of an authorized subpoena.  Subject to the objections set forth above and reserving all rights, CashCall states that there are no borrowers meeting the criteria of this request.

**REQUEST 17.**      A list identifying all West Virginia consumers who were criminally prosecuted by CashCall.com, or whose accounts were referred to law enforcement agencies for criminal prosecution by CashCall.com, as a result of a check dishonored for insufficient funds or any other conduct arising from a payday loan transaction with CashCall.com.

**RESPONSE TO REQUEST 17:**

In addition to the General Objections set forth above, CashCall objects to this request as not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General. CashCall further objects to this request as calling for CashCall to create documents and therefore exceeding the scope of an authorized subpoena. Subject to the objections set forth above and reserving all rights, CashCall states that there are no borrowers meeting the criteria of this request.

**REQUEST 18.**      Provide a chart, diagram, or other documents identifying all parent companies, corporate affiliates, or subsidiaries of CashCall.com.

**RESPONSE TO REQUEST 18:**

CashCall objects to this request as not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding. CashCall further objects to this request as calling for CashCall to create documents and therefore exceeding the scope of an authorized subpoena. Subject to the General Objections set forth above and reserving all rights, CashCall states that it does not have any parent companies, affiliates or subsidiaries that are involved in the transactions that are the subject of the probable cause alleged by the Attorney General, and CashCall will provide documents reflecting its corporate existence and standing.

**REQUEST 19.**      All business licenses certificates of authority, charters, and any other licenses or authorizations allowing CashCall.com, or any of its parent companies, corporate affiliates, or subsidiaries to engage in business or collect debts in West Virginia, and in any other state or jurisdiction, including applications and supporting documents filed to obtain the licenses and authorizations.

**RESPONSE TO REQUEST 19:**

In addition to the General Objections set forth above, CashCall objects to this request as overly broad and not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General.  CashCall further objects to this request as calling for disclosure of confidential and private information protected by law.  Subject to the objections set forth above and reserving all rights, CashCall states that it has not sought or obtained any such documents from the State of West Virginia.

**REQUEST 20.**      All documents pertaining to or that identify the physical location of each office of CashCall.com during the period covered by the subpoena, and each address where CashCall.com receives mail, including (i) a copy of the lease for the physical location of each office; and a copy of the contract or agreement for each private mailbox or other locations where written or printed communications are received.

**RESPONSE TO REQUEST 20:**

In addition to the General Objections set forth above, CashCall objects to this request as overly broad and not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General.  Subject to the General Objections set forth above and reserving all rights, CashCall will provide documents reflecting its business locations.

**REQUEST 21.**      The articles of incorporation, by charters, and any other documents pertaining to the creation, management, operation, operating guidelines, objectives or mission of CashCall.com.

**RESPONSE TO REQUEST 21:**

In addition to the General Objections set forth above, CashCall objects to this request as overly broad and not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General.  Subject to the objections set forth above and reserving all rights, CashCall will provide documents reflecting its corporate existence and standing.

**REQUEST 22.**      All documents identifying the president and CEO, officers, directors, board members and any other person with an ownership interest in CashCall.com.

**RESPONSE TO REQUEST 22:**

In addition to the General Objections set forth above, CashCall objects to this request as overly broad and not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General.  Subject to the objections set forth above and reserving all rights, CashCall will provide documents reflecting its corporate existence and standing.

**REQUEST 23.**      All contracts or agreements of any type or nature whatsoever by CashCall.com and any other party pertaining to:

i.       the operation or administration of its website;

ii.      leads generation;

iii.     processing or servicing of accounts;

iv.      transmission of funds to consumers' accounts;

v.       debiting of funds from consumers' accounts;

vi.      the marketing of its products or services to consumers; and

vii.     the application for, making of, or collection of payday loans that describe the parties' respective roles and obligations, methods of operation, and distribution of expenses incurred and proceeds generated,

**RESPONSE TO REQUEST 23:**

In addition to the General Objections set forth above, CashCall objects to this request as overly

broad and not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General. CashCall objects to this request because CashCall does not offer "payday loans" as that term is defined by applicable law. Subject to the objections set forth above and reserving all rights, CashCall will provide redacted copies of the agreements pursuant to which it served as the agent of federally regulated banks for the marketing and origination of loans to residents of West Virginia.

**REQUEST 24**. Produce copies of all advertisements whatsoever that CashCall.com has published or that CashCall.com has caused to be published by others, pertaining to payday loans by CashCall.com, including advertisements published in print, or electronic media (including the Internet), by newspapers, television or radio stations, or communicated in any manner or in any media whatsoever.

**RESPONSE TO REQUEST 24**:

In addition to the General Objections set forth above, CashCall objects to this request as overly broad and not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General CashCall further objects to this request because CashCall does not offer "payday loans" as that term is defined by applicable law. Subject to the objections set forth above and reserving all rights, CashCall states that it has not directed any advertisements to residents of West Virginia other than a general nationwide television advertisement that might have been viewable by cable or satellite television subscribers located in West Virginia.

**REQUEST 25**. For each such "advertisement" that you identified in response to item twenty-four (24) above (i) identify the person or company that created or designed the advertisement (ii) identify the person or company the person that published the advertisement; and (iii) produce a copy of the contract or agreement between CashCall.com and each person or company that created or designed the advertisement and each person or company that published the advertisement, including any other documents that identify the amount paid by CashCall.com to each such person or company for any service pertaining to its advertisements.

**RESPONSE TO REQUEST 25**:

In addition to the General Objections set forth above, CashCall objects to this request as overly broad and not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General CashCall further objects to this request because CashCall does not offer "payday loans" as that term is defined by applicable law. CashCall further objects to this request as calling for CashCall to create documents and therefore exceeding the scope of an authorized subpoena. CashCall further objects to this request as calling for disclosure of confidential and private information protected by law. Subject to the objections set forth above and reserving all rights, CashCall states that it has not directed any advertisements to residents of West Virginia other

than a general nationwide television advertisement that might have been viewable by cable or satellite television subscribers located in West Virginia, and that CashCall will provide a copy of such advertisement upon request.


**REQUEST 26.**      All communications of any types or nature between CashCall.com and the Federal Deposit Insurance Corporation ("FDIC"), the Federal Trade Commission ("FTC"), the Internal Revenue Service ("IRS"), and any other state or-federal regulators whatsoever pertaining to the making, supervision or regulation of payday loans or other financial services products or the business practices of CashCall.Com.

**RESPONSE TO REQUEST 26:**

In addition to the General Objections set forth above, CashCall objects to this request as overly broad and unduly burdensome, and not reasonably calculated to lead to the discovery of evidence admissible in any proceeding.  CashCall further objects to this request because CashCall does not offer "payday loans" as that term is defined by applicable law.  CashCall further objects to this request as calling for disclosure of confidential and private information protected by law.


**REQUEST 27.**      Documents pertaining to all civil actions, including both private class action and individual suits, and any investigations or enforcement proceedings commenced by any state Attorney General's Office, the U.S. Department of Justice, the FDIC, the FTC, the IRS or any ether state or federal law enforcement or regulatory agency, involving payday loans and/or the collection of consumer accounts by CashCall.com, including (i) the complaint or initial pleading and all substantive pleadings or documents filed therein; and (ii) all dispositional orders, consent decrees, settlement agreements, assurances of discontinuance, or judgments of any type or nature whatsoever from the matter.

**RESPONSE TO REQUEST 27:**

In addition to the General Objections set forth above, CashCall objects to this request as not reasonably calculated to lead to the discovery of evidence admissible in any authorized proceeding, and exceeding the scope of any probable cause alleged by the Attorney General. CashCall further objects to this request because CashCall does not offer "payday loans" as that term is defined by applicable law.  CashCall further objects to this request as calling for disclosure of confidential and private information protected by law.

Respectfully submitted,


__/s/ Bruce M. Jacobs_____
Bruce M. Jacobs (WV Bar No. 6333)
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard, East (25301)
P.O. Box 273
Charleston, WV 25321-0273
(304) 340-3800 (telephone)
(304) 340-3801 (facsimile)

*Of counsel:*

Eric N. Whitney
Jamie Mathew
GREENBERG TRAURIG, L.L.P.
2200 Ross Avenue
Suite 5200
Dallas, Texas 75201
(214) 665-3600 (telephone)
(214) 665-3601 (facsimile)

J. Scott Sheehan
Tamara Ruen
GREENBERG TRAURIG, L.L.P
1000 Louisiana, Suite 1800
Houston, Texas 77002
(713) 374-3500 (telephone)
(713) 374-3505 (facsimile)

*HOU 406172059v8 10/22/2007*

## FIRST AMENDED AND RESTATED CONSUMER LOAN MARKETING, ORIGINATION, AND SALE AGREEMENT

THIS FIRST AMENDED AND RESTATED CONSUMER LOAN MARKETING, ORIGINATION, AND SALE AGREEMENT (the "Agreement") is made and entered into as of this 8ᵗʰ day of March, 2007, by and between FIRST BANK & TRUST OF MILBANK, formerly known as COMMUNITY STATE BANK, a state chartered bank organized under the laws of the state of South Dakota with its home office at 215 West 4th Avenue, Milbank, South Dakota 57252-1727 (hereinafter referred to as "Bank") and CASHCALL, INC., a corporation organized under the laws of the State of California with an office at 17360 Brookhurst Street, Fountain Valley, California 92708 (hereinafter referred to as "CashCall").

### W I T N E S S E T H:

WHEREAS, Bank is a state banking association authorized to engage in the business of underwriting and originating loans to consumers throughout the United States; and

WHEREAS, Bank has the authority to hire third parties to conduct various functions of the consumer loan origination process, including, without limitation, the marketing of the consumer loans;

WHEREAS, CashCall is currently in the business of marketing, soliciting, underwriting, and originating consumer loans; and

WHEREAS, CashCall is desirous of having Bank underwrite and originate loans to consumers pursuant to the marketing and solicitation efforts of CashCall under the terms and conditions of this Agreement.

WHEREAS, the parties have previously entered into a Consumer Loan Marketing, Origination, and Sale Agreement dated August 2, 2006 (the "First Agreement"), a First Amendment to Consumer Loan Marketing, Origination, and Sale Agreement dated October 19, 2006 (the "First Amendment"), and a Second Amendment to Consumer Loan Marketing, Origination, and Sale Agreement dated December 27, 2006 (the "Second Amendment"); and

WHEREAS, the parties desire to amend and modify the terms of the First Agreement, First Amendment, and Second Amendment by entering into this First Amended and Restated Consumer Loan Marketing, Origination, and Sale Agreement which shall replace the First Agreement, First Amendment, and Second Amendment as of the date hereof.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby conclusively acknowledged, the parties agree as follows:

```
EXHIBIT
E
```

CASHCALL-WVAG 0000(
CONFIDENTIAL

## ARTICLE I.  DEFINITIONS AND CONSTRUCTION

Section 1.1     Definitions.  In addition to definitions provided for other terms elsewhere in this Agreement and except as otherwise specifically indicated, the following terms shall have the indicated meanings:

"Advertising Materials" means all materials and methods used by CashCall in the performance of its marketing and solicitation obligations under this Agreement, including, without limitation, advertisements, direct mail pieces, brochures, website materials, and any other similar materials.

"Affiliate" of a person means a person in Control of that person, a person Controlled by that person, or a person under common Control with that person.

"Applicant" means a prospective Borrower.

"Application" means the electronic application by which an Applicant applies for a Loan in the form provided for in the Program Guidelines.

"Borrowers" mean those persons who are borrowers with respect to the Loans.

"Business Day" shall mean any day on which the Federal Reserve Bank is open for the business of wire transfers.

"Commencement Date" means August 15, 2006.

"Control" means the ownership or power to vote ten percent (10%) or more of the outstanding ownership or voting interests of a person.

"Credit Facility" means a financing arrangement Cash Call has with any third party, including Deutsche Bank or any subsequent bank or financial institution, to borrow funds to finance its obligations to Bank with respect to the Program.

"FDIC" means the Federal Deposit Insurance Corporation.

"Funding Day" shall mean any day on which Bank originates new Loans.

"Guarantor" means J. Paul Reddam.

"Loan Documents" mean collectively, with respect to any Loan, the promissory note, Application, any other documents signed by Borrowers in connection with the Loans and any other notices or disclosures required to be provided pursuant to the Rules in connection therewith.

"Loans" means the loans made by Bank to Borrowers pursuant to this Agreement.

- 2 -

CASHCALL-WVAG 000009
CONFIDENTIAL

"Net Revenue" shall have the meaning described in Section 7.3.

"Non-Business Day Settlement Account" shall have the meaning described in Section 7.1.

"Operational Costs" mean Bank's actual costs incurred in connection with the operation of the Program, including costs of distributing Loan proceeds (including, without limitation, wire transfer fees), Bank's employment expenses directly related to the Program, travel costs, equipment costs directly incurred as a result of the Program, lease expenses, audit expenses (subject to a limit of ▓▓▓▓ per year), unreimbursed legal expenses, and any other related costs directly and reasonably incurred by Bank in connection with the Program. Costs that otherwise would have been incurred by the Bank in the absence of the Program shall not constitute Operational Costs.

"Program" means the lending program for the solicitation, marketing, and origination of Loans pursuant to this Agreement and the Program Guidelines.

"Program Guidelines" means those guidelines, requirements and procedures established by Bank and CashCall for the administration of the Program, as amended, modified, or supplemented from time to time.

"Program Materials" means all Loan Documents and all other documents, materials and methods used in connection with the performance of the parties' obligations under this Agreement, including without limitation the promissory notes, Applications, disclosures required by the Rules, collection materials, and all similar materials, but excluding Advertising Materials.

"Regulatory Authorities" means the South Dakota Division of Banking, the FDIC and any local, state, or federal regulatory authority having jurisdiction or exercising regulatory or similar oversight with respect to Bank, CashCall, or Third Party Service Providers (except that nothing herein shall be deemed to constitute an acknowledgement by Bank that any Regulatory Authority other than the South Dakota Division of Banking and the FDIC has jurisdiction or exercises regulatory or similar oversight with respect to Bank).

"Rules" means all local, state, and federal statutes or ordinances applicable to the acts of Bank, CashCall, or a Third Party Service Provider as they relate to the Program; any order, decision, injunction, or similar pronouncement of any court, tribunal, or arbitration panel issued with respect to Bank, CashCall, or a Third Party Service Provider in connection with this Agreement; and any regulations, policy statements, and any similar pronouncement of a Regulatory Authority having jurisdiction with respect to the acts of Bank, CashCall, or a Third Party Service Provider as they relate to the Program.

CASHCALL-WVAG 00001▓
CONFIDENTIAL

"Third Party Service Provider" means any contractor or service provider retained by Bank or CashCall, or retained by any party directly or indirectly retained by Bank or CashCall, who provides or renders services in connection with the Program.

In addition, the terms "Bank Model Loans" shall have the meaning given in Section 11.9, "Performance Matrix" shall have the meaning given to it in Section 5.2 below, "Bank Implementation Fee," and "Marketing Fee" shall have the meanings given them in Sections 7.1 and 7.2 below; the term "Indemnified Parties," "Indemnifying Parties," and "Losses" shall have the meanings given to them in Section 11.1 below; and the term "Settlement Reserve" shall mean the deposit described in Section 9.1 below.

Section 1.2    Construction.  Unless the context otherwise clearly indicates, words used in the singular include the plural and words in the plural include the singular.

## ARTICLE II.  GENERAL PROGRAM DESCRIPTION

Section 2.1    General Description.  The parties agree that, in accordance with the Program Guidelines, the Program shall consist of CashCall's marketing and solicitation of Loans to potential borrowers, with the Loans being underwritten and originated by Bank and subsequently sold to CashCall.  The marketing and solicitation shall occur in such geographic locations as the Bank and CashCall may from time to time agree.  Nothing herein shall be deemed to require Bank to originate any specific number of Loans and Bank shall have the right to terminate this Agreement as provided herein.  Bank may from time to time establish policies concerning the volume of new Loans that it is willing to originate in connection with the Program.  The duties of the parties in connection with the Program shall be as set forth in the terms of this Agreement.

## ARTICLE III.  DUTIES OF CASHCALL AND BANK

Section 3.1    Duties and Responsibilities of CashCall.  CashCall shall perform and discharge the following duties and responsibilities:

(a)    As detailed in Section 4.1, CashCall shall be responsible for the preparation of the Advertising Materials and Program Materials to be reviewed by Bank and used in connection with the Program and shall ensure that the Advertising Materials and Program Materials comply with the Rules.

(b)    CashCall shall be responsible for the marketing and solicitation of the Loans to consumers through use of the approved Advertising Materials and Program Materials.  It is anticipated that CashCall's marketing efforts may include the use of radio, television, internet, or print advertising to direct potential Borrowers to CashCall's website where the potential customers would either complete a Loan Application on-line or contact a CashCall representative for assistance in completing the appropriate Loan Application.  In performing said duties, CashCall shall at all times and in all material respects comply with applicable Rules.  Further, CashCall shall not knowingly allow the placement or display of

- 4 -

CASHCALL-WVAG 00001
CONFIDENTIAL

any Advertising Materials on any website displaying pornography or any website engaged in the gambling business, and shall use commercially reasonable efforts to, as soon as practicable, remove or cause to be removed such placements or displays.

(c)     CashCall shall cooperate with Bank to review, modify and update the Program Guidelines subject to the Bank's discretion.

(d)     CashCall shall forward completed Applications and related materials to Bank in such form and format as Bank and CashCall may subsequently agree for Bank to review for underwriting and Loan origination.

(e)     CashCall shall take appropriate measures to verify the identity of all Applicants consistent with the Rules and any internal policies or procedures at Bank as set forth in the Program Guidelines. CashCall shall take such further steps as may be necessary to prevent fraud in connection with the Program.

(f)     From time to time, and only upon Bank's written request, CashCall shall perform appropriate underwriting on Loans in accordance with the Program Guidelines. In such instances, CashCall will comply, as determined by Bank in Bank's sole and absolute discretion, with the loan underwriting criteria as administered by Bank.

(g)     CashCall shall provide, on the Bank's behalf, an appropriate completed adverse action notice to any Applicant whose Application for a Loan is rejected.

(h)     CashCall shall put in place such quality controls as may be reasonably necessary to adequately supervise the operation of the Program and report such information to Bank.

(i)     CashCall shall maintain and retain on behalf of Bank all Applications and copies of all adverse action notices and other documents relating to rejected Applications for the period required by applicable law. CashCall shall further maintain originals or copies, as applicable, of all Loan Documents and any other documents provided to or received from Borrowers for the period required by applicable law.

(j)     CashCall shall purchase the Loans in accordance with the provisions of Section 6.1.

(k)     CashCall shall pay the Bank's reasonable attorneys' fees associated with Bank's compliance review of the Advertising Materials and Program Materials.

(l)     CashCall shall perform all post-funding customer service and collection functions in connection with the Loans in accordance with CashCall's ordinary and

- 5 -

CASHCALL-WVAG 00001<br>CONFIDENTIAL

customary practices and all applicable Rules, including, but not limited to, the Fair Debt Collections Practices Act and any similar applicable state statutes.

(m)   CashCall will assist Bank in the hiring and training of representatives in the loan underwriting and funding process, including the maintenance of an on-site presence at Bank's place of business as necessary for the initial and ongoing training of the representatives.

(n)   CashCall shall maintain at its expense employee dishonesty coverage and a general comprehensive liability policy, each with a financially sound and reputable insurer reasonably acceptable to Bank. Such employee dishonesty and general comprehensive liability policy shall provide coverage limits of not less than $3 million and $1 million, respectively, together with commercial umbrella coverage with a general aggregate limit of not less than $3 million. CashCall shall provide copies of such insurance policies to Bank and provide to Bank such evidence as it may reasonably request concerning the continued existence of such coverages during the term of this Agreement.

(o)   Review the Rules of each state in which Loans will be marketed in connection with the Program to determine whether the applicable state's Rules require Bank to be licensed or registered to originate and fund Program Loans to persons residing within said state and to consider such other matters concerning the Rules of such state as Bank may reasonably request. With respect to any state requiring the Bank to be licensed or registered, CashCall shall so advise Bank and Bank shall have the right to either choose to become licensed or registered in said state or the right to instruct CashCall not to market Loans or accept Loan Applications from potential Borrowers in said state. CashCall shall pay all costs and expenses of any registration or licensing of Bank to originate and fund Program Loans, including any annual renewal fees or charges due and owing during the term of this Agreement as well as any fees and costs incurred in connection with CashCall's review of the Rules of any state as set forth herein. In conjunction with the consideration of the applicable Rules of any state in which CashCall seeks to market Loans, Bank may ask CashCall to procure at its expense an opinion of counsel licensed to practice law in said state to the effect that Bank does not need to be licensed or registered by the state to originate and fund enforceable Loans in connection with the Program. Notwithstanding the foregoing, CashCall shall not be liable for any damages or other expenses incurred as a result of the Bank's failure to obtain a license or provide notification in any state.

Section 3.2   Duties and Responsibilities of Bank. Bank shall perform and discharge the following duties and responsibilities:

(a)   Bank shall, in a timely manner (but in no event longer than ten (10) business days), review and approve or disapprove of the Advertising Materials and Program Materials prepared by CashCall.

- 6 -

CASHCALL-WVAG 00001
CONFIDENTIAL

(b)  Bank shall in its sole discretion, review, modify and update the Program Guidelines.

(c)  Bank shall accept completed Applications and related materials from CashCall and perform appropriate underwriting in accordance with the Program Guidelines. Notwithstanding the foregoing, Bank shall have the authority to direct CashCall to underwrite Loans from time to time upon written request.

(d)  Bank shall originate and fund all Loans meeting the credit criteria set forth in the Program Guidelines and Bank shall communicate to CashCall its credit decision on each Application.

(e)  Bank shall sell all Loans originated under the Program to CashCall in accordance with the terms and conditions of Section 6.1.

(f)  Bank shall provide a Bank Relationship Officer (as defined below) dedicated to the Program. The Bank Relationship Officer will spend a significant portion of his or her time on-site at CashCall's geographic location.

(g)  Bank shall disburse Loan proceeds in accordance with the Program Guidelines.

## ARTICLE IV. CREATION OF PROGRAM MATERIALS, ADVERTISING MATERIALS, AND ACCOUNTING SYSTEM

Section 4.1  Program Materials; Advertising Materials; Bank Trade Names and Trademarks. All Program Materials shall be subject to the prior review and approval of Bank, which such approval shall not be unreasonably withheld. CashCall agrees not to use or disseminate any Program Materials unless such Program Materials have been approved in advance by Bank in writing. CashCall agrees to pay all reasonable attorney fees associated with the review of Program Materials for compliance with applicable Rules, subject to an annual cap of ▮▮▮▮, provided, however, that this cap may be raised or eliminated upon written consent of the parties.

CashCall shall be responsible for the development of proposed Advertising Materials concerning advertising and marketing of Loans and solicitation of potential Borrowers. The form and content of all Advertising Materials shall be subject to the prior review and approval of Bank, which such approval shall not be unreasonably withheld, and which shall be approved or disapproved within the time period specified in Section 3.2 herein. CashCall agrees to pay all reasonable attorney fees associated with the review of Advertising Materials for compliance with applicable Rules.

Bank may at any time retract or modify any approval previously given by it with respect to any Program Materials or Advertising Materials if Bank reasonably determines in good faith that such action is necessary in order to remain in compliance with the Rules or for the safe and sound operation of the Program.

CASHCALL-WVAG 000014
CONFIDENTIAL