IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

STATE OF WEST VIRGINIA ex rel.
DARRELL V. MCGRAW, JR.,
ATTORNEY GENERAL,

       Plaintiff,

v.
                                       Civil Action No.: 2:08-cv-01292
                                       Judge Joseph R. Goodwin

CASHCALL, INC., and
J. PAUL REDDAM, in his capacity as
President and CEO of CashCall, Inc.,

       Defendants.

STATE'S MEMORANDUM OF LAW IN
OPPOSITION TO CASHCALL'S MOTION TO DISMISS

                Respectfully submitted,

                STATE OF WEST VIRGINIA
                ex rel. DARRELL V. McGRAW, JR.,
                Attorney General, Plaintiff,

                By Counsel

                /s/ NORMAN GOOGEL #1438
                nag@wvago.gov
                Consumer Protection/Antitrust Division
                812 Quarrier Street
                L&S Building, First Floor
                Charleston, West Virginia 25301
                (304) 558-8986

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . . . . . 1

II.     THE STATE'S COMPLAINT SHOULD NOT BE DISMISSED FOR FAILURE
        TO STATE A CLAIM UNLESS IT APPEARS BEYOND DOUBT THAT THE
        PLAINTIFF  CAN PROVE NO SET OF FACTS IN SUPPORT OF ITS
        CLAIM THAT WOULD ENTITLE IT TO RELIEF  . . . . . . . . . . . . . . . . . . . . . . . 2

III.    SO LONG AS A STATE AGENCY'S ASSERTION OF AUTHORITY IS NOT
        APOCRYPHAL, A PROCEDURALLY SOUND SUBPOENA MUST BE
        ENFORCED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     THE POWER OF STATE ATTORNEYS GENERAL TO SUBPOENA
        RECORDS FROM ANY PERSON DOING BUSINESS IN THEIR STATES
        HAS BEEN UNIVERSALLY UPHELD IN THE FACE OF JURISDICTIONAL
        CHALLENGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.      THE STATE'S ABILITY TO ENFORCE ITS SUBPOENA AGAINST
        CASHCALL HAS NOT BEEN TERMINATED BY THE FILING OF THIS SUIT
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VI.     THE STATE'S ABILITY TO REQUIRE PRODUCTION OF PERSONAL
        IDENTIFYING AND OTHER INFORMATION ABOUT CONSUMERS FROM
        A CREDITOR IS NOT LIMITED BY THE MAXWELL GOVERNMENTAL
        ACCESS TO RECORDS ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VII.    THE STATE'S CLAIMS AGAINST CASHCALL ARE NOT PREEMPTED BY
        FEDERAL LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VIII.   THE STATE'S DEBT COLLECTION CLAIMS SHOULD NOT BE
        DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IX.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

Bell Atlantic Corporation v. Twombly,
 127 S. Ct. 1955 (2007) ................................................................. 3

Equal Employment Opportunity Commission v. Children's Hospital Medical Center,
 719 F.2d 1426 (9th Cir. 1983) ........................................................ 4

Goleta National Bank v. Lingerfelt,
 211 F. Supp. 2d 711 (E. D. N. C. 2002) ........................................ 18

Jeter v. Credit Bureau, Inc.,
 760 F.2d 1168 (11th Cir. 1985) ..................................................... 19

Johnson Corp. v. Perkins,
 317 U.S. 501 (1943) ..................................................................... 5

Linde Thomson Langworthy Kohn & VanDyke, P.C. v. Resolution Trust Corporation,
 5 F.3d 1508 (U.S. App. D.C. 1993) ......................................... 12, 13

National Labor Relations Board v. Cable Car Advertisers, Inc.,
 319 F. Supp. 2d 991 (N.D. Cal. 2004) ........................................... 14

Nielson v. Dickerson,
 307 F.3d 623 (7th Cir. 2002) ........................................................ 19

Oklahoma Press Publishing Company v. Walling,
 327 U.S. 186 (1945) ............................................................. 6, 9, 10

Reich v. Hercules, Inc.,
 857 F. Supp. 367 (D.N.J. 1994) .................................................... 14

Resolution Trust Corporation v. Walde,
 18 F.3d 943 (U.S. App. D.C. 1994) ............................................... 13

In re Stanley Plating,
 637 F. Supp. 71 (D. Comm. 1986) ................................................ 13

Sutros Brothers & Co. v. S.E.C.,
 199 F. Supp. 438 (S.D.N.Y. 1961) ...................................... 11, 12, 13

U.S. v. Brendsel,
    301 F. Supp. 2d 518 (E.D.Va. 2004) ............................................................. 14

United States v. Frowein,
    727 F.2d 227 (2d Cir. 1984) ...................................................................... 13

United States v. Merit Petroleum, Inc.,
    731 F.2d 901 (Temp. Emer. Ct. App. 1984) ............................................. 13

United States v. Morton Salt,
    338 U.S. 632 (1950) ........................................................................ 5, 6, 9, 10

United States v. National Financial Services, Inc.,
    98 F.3d 131 (4th Cir. 1996) ...................................................................... 19

United States v. Powell,
    379 U.S. 48 (1964) ......................................................................................... 6

## STATE CASES

Chapman v. Kane Transfer Company,
    236 S.E.2d 207 (W. Va. 1977) ............................................................. 2, 3, 4

Coberley v. Coberley,
    580 S.E.2d 515 (W. Va. 2003) ....................................................................... 3

Com. ex rel. Hancock v. Pineur,
    533 S.W.2d 527 (Ky. 1976) ......................................................................... 11

Forshey v. Jackson,
    2008 WL. 4967061 ........................................................................................ 4

Hoover v. Moran,
    662 S.E.2d 711 (W. Va. 2008) ...................................................................... 4

In re: Flood litigation Coal River Watershed,
    668 S.E.2d 203 (W. Va. 2008) ...................................................................... 4

MacFarlane v. American Banco Corp.,
    570 P.2d 825 (Colo.1977) ........................................................................... 10

McCormick v. Carroll,
    600 S.E.2d 576 (W. Va. 2004) ...................................................................... 2

National Labor Relations Board v. Alaska Pulp Corp.,
    1995 WL. 3897229 (D.C. Cir.) ........................................................... 14

National Labor Relations Board v. Bacchi,
    2004 WL. 2290736 (E.D.N.Y.) ........................................................... 13

Scott v. Association for Childbirth at Home, Intn'l,
    430 N.E.2d 1012 (Ill.1982) ........................................................... 9, 10

State ex rel. Hoover v. Berger,
    483 S.E.2d 12 (W. Va. 1996) ........................................................... 6, 7

State ex rel. Palumbo v. Graley's Body Shop,
    425 S.E.2d 177 (W. Va. 1992) ........................................................... 5, 6

U.S. v. Clarke,
    2004 WL. 231499 (D.Md.) ........................................................... 13

West Virginia Human Rights Commission v. Moore,
    411 S.E.2d 702 (W. Va. 1991) ........................................................... 4, 5

Williamson v. Harden, ,
    585 S.E.2d 369 (W. Va. 2003) ........................................................... 2

Yoak, M.D. v. Marshall University Board of Governors,
    2008 WL. 5192108 ........................................................... 4

## FEDERAL STATUTES

12 U.S.C. § 1861 ........................................................... 16

12 U.S.C. § 1867(c) ........................................................... 17

15 U.S.C. § 1601 et seq ........................................................... 19

15 U.S.C. § 1692e(5) ........................................................... 19

## STATE STATUTES

W. Va. Code § 31A-2A-1 et seq ........................................................... 14, 15

W. Va. Code § 31A-2A-2(6) ........................................................... 15

W. Va. Code § 46A-6-101 ........................................................... 7

W. Va. Code § 46A-6C-1 et seq. ........................................................ 16

W. Va. Code § 46A-7-103(i) ........................................................... 15

W. Va. Code § 46A-7-104 ...................................................... 1, 6, 8, 15

W. Va. Code § 46A-7-104(1) ........................................................ 6, 8

W.Va. Code § 46A-7-104(2) ........................................................... 8

### STATE'S MEMORANDUM OF LAW IN
### OPPOSITION TO CASHCALL'S MOTION TO DISMISS

The Plaintiff, the State of West Virginia, ex rel. Darrell V. McGraw, Jr., Attorney General ("the State" or "Attorney General"), by counsel, Norman Googel, Assistant Attorney General, hereby files this memorandum of law in opposition to CashCall's motion to dismiss the above civil action as follows:

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

CashCall has improperly removed this case to federal court in the absence of federal question jurisdiction. Now it prematurely asks the federal court to consider and grant a motion to dismiss a large portion of the State's Complaint.  It is evident that CashCall bases its motion to dismiss on the same grounds as its notice of removal; that is, CashCall argues that the State's claims are <u>preempted</u> by federal banking law even though the State only asserted state law claims against CashCall, which is not a bank, and the State did not sue a bank.

As explained exhaustively in the State's memorandum of law in support of its motion to remand ("Remand Memorandum"), the State's claims are <u>not</u> preempted.  In fact, the State has asserted that CashCall is the de facto lender in the transactions at issue in this matter.   If the State prevails, CashCall has violated all of the laws as alleged in the ten causes of action, including the second and third causes of action (the only ones that would be subject to a <u>defense</u> of federal preemption in state court).

As alleged in the State's complaint, CashCall refused to comply with the investigative subpoena that was duly issued as authorized by W. Va. Code § 46A-7-104. CashCall made a self-serving response to the subpoena by producing a heavily- redacted copy of its service agreement with the First Bank and Trust of Milbank ("the Bank").

Significantly, CashCall redacted <u>all</u> of the financial data from the agreement that would be pertinent to a determination by the Attorney General or by a court as to whether CashCall was the de facto lender.

While still withholding critical information, CashCall now asks the federal court to dismiss the State's complaint without a hearing on the merits and without enforcement of the subpoena.   For the reasons set forth herein below, the State asks that this court deny CashCall's motion to dismiss or, in the alternative, that this court defer to the state court for ruling on this motion after remand.

## II. THE STATE'S COMPLAINT SHOULD NOT BE DISMISSED FOR FAILURE TO STATE A CLAIM UNLESS IT APPEARS BEYOND DOUBT THAT THE PLAINTIFF CAN PROVE NO SET OF FACTS IN SUPPORT OF ITS CLAIM THAT WOULD ENTITLE IT TO RELIEF.

In <u>Chapman v. Kane Transfer Company</u>, 236 S.E.2d 207 (W. Va. 1977), the West Virginia Supreme Court of Appeals established the standard to be followed in deciding motions to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.   The court in <u>Chapman</u> explained that the "rule for testing the sufficiency of a complaint when challenged by a motion to dismiss for failure to state a claim has been well defined by the United States Supreme Court" as follows:

> In appraising the sufficiency of a complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim <u>unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.</u>

<u>Id.</u> at 538, <u>citing</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)(emphasis added).  The rule adopted by the court in <u>Chapman</u> has been followed consistently since that time.  *See e.g.,* <u>McCormick v. Carroll</u>, 600 S.E.2d 576, 579 (W. Va. 2004); <u>Williamson v. Harden</u>,

2

585 S.E.2d 369, 370-71 (W. Va. 2003); and <u>Coberley v. Coberley</u>, 580 S.E.2d 515, 517 (W. Va. 2003).

The U.S. Supreme Court modified its long-standing rule that was first enunciated in <u>Conley</u> and now supports a slightly stricter standard in evaluating 12(b)6 motions to dismiss. Specifically, the court in <u>Bell Atlantic Corporation v. Twombly</u>, 127 S. Ct. 1955 (2007) held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *Ibid.*, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.

<u>Id.</u> at 1955. Even if <u>Twombly</u> was the proper standard to apply to this motion to dismiss (as explained below it is not), the State would easily meet this standard as well. However, the modified standard established by <u>Twombly</u> is only applicable to the resolution of motions to dismiss in <u>federal</u> cases under rule 12(b)(6). The State's case against CashCall asserts only <u>state</u> claims and was filed in state court. If the State's motion to remand is granted, it will be returned to state court, which is the proper place to try state claims and to decide the motion to dismiss at the appropriate time.

Although the West Virginia Supreme Court of Appeals in <u>Chapman</u> adopted the <u>Conley</u> rule for deciding the sufficiency of complaints, it did so because it agreed with the principle. Importantly, the West Virginia Supreme Court of Appeals is not obligated to follow the modification of this rule by <u>Twombly</u> and, in fact, it has not done so. The West Virginia Supreme Court of Appeals has decided at least four cases involving motions to

dismiss under rule 12(b)(6) since <u>Twombly</u> and, in each case, the court declined to follow <u>Twombly</u>. *See* <u>Yoak, M.D. v. Marshall University Board of Governors</u>, 2008 W.L. 5192108 (citing its earlier cases without any reference to <u>Twombly</u>); <u>Forshey v. Jackson</u>, 2008 W.L. 4967061 (citing the rule in <u>Chapman</u> in deciding the motion to dismiss); <u>Hoover v. Moran</u>, 662 S.E.2d 711, 715 (W. Va. 2008) (citing its rule in <u>Chapman</u> in deciding the motion to dismiss, noting "we need not decide whether this court will adopt the <u>Twombly</u> standard"); and <u>In re: Flood litigation Coal River Watershed</u>, 668 S.E.2d 203, 216 (W. Va. 2008) (declining to follow and distinguishing <u>Twombly</u> standard argued by the defendants).

As the State has set forth exhaustively in its Remand Memorandum, CashCall's motion to dismiss should not be granted whether this court applies the West Virginia Supreme Court's rule in <u>Chapman</u> or the stricter <u>Twombly</u> standard for federal cases.

**III.    SO LONG AS A STATE AGENCY'S ASSERTION OF AUTHORITY IS NOT APOCRYPHAL, A PROCEDURALLY SOUND SUBPOENA MUST BE ENFORCED.**

Since at least 1991, the West Virginia Supreme Court of Appeals has followed the strong public policy established by the United States Supreme Court that administrative agency subpoenas must be enforced almost without restriction.  In <u>West Virginia Human Rights Commission v. Moore</u>, 411 S.E.2d 702, 707 (W. Va. 1991), a subpoena enforcement proceeding, the court noted:

> The Federal cases that have addressed this issue [subpoena enforcement] make it clear that agencies that are vested with subpoena power must have latitude in pursuing investigations in furtherance of their objectives and purposes.

The Court in <u>Moore</u> expressly adopted a three-part test previously articulated by the Ninth Circuit in <u>Equal Employment Opportunity Commission v. Children's Hospital Medical</u>

Center, 719 F.2d 1426 (9th Cir. 1983) in determining whether a subpoena issued by the Human Rights Commission should be enforced: (1)  whether Congress has granted the authority to investigate; (2)  whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation.  Moore, 411 S.E.2d at 777.  The court in Moore also noted, importantly, "It is inappropriate to interfere with an administrative investigation by exploring substantive defenses to a later adversarial proceeding".  Id. at 707, citing Johnson Corp. v. Perkins, 317 U.S. 501 (1943)(emphasis added).

In State ex rel. Palumbo v. Graley's Body Shop, 425 S.E.2d 177 (W. Va. 1992), the court, in enforcing the Attorney General's subpoena in an antitrust investigation, clarified that "the investigatory power of the Attorney General . . .  is best compared to the authority of an administrative agency to investigate prior to making any charges of a violation of the law."  Id. at 182, n. 2, citing United States v. Morton Salt, 338 U.S. 632, 642 (1950).  The court in Graley then explained that the Attorney General's investigative powers are analogous to the Federal Trade Commission when investigating unlawful trade practices.  In doing so, Graley adopted the principles of Morton Salt in defining the extent of the Attorney General's subpoena power:

> The only power that is involved here is the power to get information from those who best can give it and are most interested in not doing so.  Because judicial power is reluctant if not unable to summons evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has the power of inquisition, if one chooses to call it that, which is not derived from the judicial function.  It is more analogous to the [Investigative] Grand Jury, which does not depend on a case or controversy for power to get evidence but

5

> can investigate merely on suspicion that the law is being
> violated, or even just because it wants assurance that it is not.
> When investigative and accusatory duties are delegated by
> statute to an administrative body, it, too, may take steps to
> inform itself as to whether there are probable violations of the
> law.

Graley, 425 S.E.2d at 182, quoting United States v. Morton Salt, 338 U.S. at 642.

The issue in Graley was whether subpoenas had been lawfully issued under the

West Virginia Antitrust Act, which  allows the Attorney General to issue subpoenas "if the

attorney general has probable cause to believe that a person has engaged in an act which

is subject to action by the attorney general under any of the provisions of this article[.]"

This language is identical to the language found in West Virginia Code § 46A-7-104(1)

pertaining to consumer protection investigations; thus, the court's holding in Graley should

also apply to the Attorney General's powers to issue subpoenas under the West Virginia

Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-7-104.

The  court's  incorporation  of  the  Morton Salt  principles  when  defining  a  state

agency's  subpoena  power  was  further  solidified  in  State ex rel. Hoover v. Berger,

483 S.E.2d 12 (W. Va. 1996), a case that examined whether to enforce a subpoena issued

by the West Virginia Board of Medicine.  Citing the seminal U.S. Supreme Court cases of

United States v. Powell, 379 U.S. 48, 57-58 (1964), Morton Salt, supra, and Oklahoma

Press Publishing Company v. Walling, 327 U.S. 186, 208 (1945), the court held that a state

administrative agency, "in order to obtain judicial backing" of a subpoena, must show:

> (1) the subpoena is issued for a legislatively authorized
> purpose, (2) the information sought is relevant to the
> authorized purpose, (3) the information sought is not already
> within the agency's possession, (4) the information sought is
> adequately described, and (5) proper procedures have been
> employed in issuing the subpoena.  If these requirements are

6

> satisfied, the subpoena is presumably valid and the burden
> shifts to those opposing the subpoena to demonstrate its
> invalidity.  The party seeking to quash the subpoena must
> disprove through facts and evidence the presumed relevance
> and purpose of the subpoena.

Hoover, 483 S.E.2d at 18.  Importantly, the court also held "these standards . . . apply to

subpoenas issued by other agencies."  The Hoover court's reliance upon such federal

standards in subpoena enforcement is particularly appropriate because the legislature has

commanded that the courts, when construing the WVCCPA, "be guided by the

interpretation given by federal courts to the various federal statutes dealing with the same

or similar matters."  W. Va. Code § 46A-6-101.

Notwithstanding the Hoover court's recitation of a specific formal standard for

enforcement of a state agency's subpoena, Justice Cleckley, writing for a unanimous

Court, restated the applicable showing in a simpler manner for courts to follow:

> Subpoena enforcement proceedings are designed to be
> summary in nature, and an agency's investigations should not
> be bogged down by premature challenges to its regulatory
> jurisdiction.  As long as the agency's assertion of authority is
> not obviously apocryphal...a procedurally sound subpoena
> must be enforced.  Similarly, the initial determination of what
> information is relevant for its investigation... is left to the
> administrative agency.  To this extent, the circuit court has
> authority to enforce the subpoena unless the agency is
> obviously wrong...therefore,...judicial review is very restricted.

Id. at 19-20 (emphasis added).

There is no question that the investigative subpoena issued by the Attorney General

to CashCall meets the federal standards adopted by Hoover for review of subpoenas

issued by West Virginia agencies.  Once these concerns are satisfied, the court explains,

"the party seeking to quash the subpoena must disprove through facts and evidence the

presumed relevance and purpose of the subpoena." <u>Id</u>. (emphasis added).  In any event,

the burden now falls upon CashCall to show cause, in the first instance, why an order

should not be issued compelling compliance with the Attorney General's subpoena.

IV.   **THE POWER OF STATE ATTORNEYS GENERAL TO SUBPOENA RECORDS FROM ANY PERSON DOING BUSINESS IN THEIR STATES HAS BEEN UNIVERSALLY UPHELD IN THE FACE OF JURISDICTIONAL CHALLENGES**

West Virginia Code § 46A-7-104 (1) grants the Attorney General the broad power

to issue subpoenas if he has "probable cause to believe that a person has engaged in an

act which is subject to an action by the Attorney General."   Specifically, the statute

authorizes the Attorney General to:

> Administer oaths or affirmations. . . subpoena witnesses, compel their attendance, adduce evidence<u>, and require the production of any matter which is relevant to the investigation</u>, including the existence, description, nature, custody, condition and location of any books, records, documents or other tangible things and the identify and location of persons having knowledge of relevant fact, or any other matter reasonably calculated to lead to the discovery of municipal evidence

(Emphasis added.)   It is important to note that the legislature contemplated that the

Attorney General would have reason to subpoena records located outside of the state.

When subpoenaed records are located outside the state, W. Va. Code § 46A-7-104 (2)

provides: "The person at his option shall either make them available to the attorney general

at a convenient location within the State or pay the reasonable and necessary expenses

for the attorney general or his representative to examine them at the place where they are

maintained."

Virtually every state has a consumer protection statute substantially similar to the one found in the WVCCPA.   In most instances, the attorney general of the state is authorized to investigate and enforce the law and is granted subpoena power in order to effectively do so.   Historically, many companies that have been served investigative subpoenas by attorneys general have challenged these subpoenas on a wide variety of jurisdictional grounds.  However, a review of all known reported cases indicates that courts have universally rejected such challenges.

In Scott v. Ass'n for Childbirth at Home, Intn'l, 430 N.E.2d 1012 (Ill.1982), the Supreme Court of Illinois strongly upheld a constitutional challenge to the attorney general's investigative powers in the enforcement of its state consumer protection law. The court in Scott noted "it has been settled since Oklahoma Press Publishing Company v. Walling, 327 U.S. at 186 (1946), that the Federal Constitution does not require a showing of probable cause as a prerequisite to a Federal agency's initiating an administrative investigation." Scott, 430 N.E.2d at 1019.  Quoting from Walling, the Court in Scott explained:

> ([T]he administrator's) investigative function, in searching out violations with a view to securing enforcement of the Act, is essentially the same as the grand jury's, * * * and is governed by the same limitations.   These are that he shall not act arbitrarily or in access of his statutory authority, but this does not mean that his inquiry must be "limited by forecasts of the probable result of the investigation."

Id. at 1019, citing Walling, 327 U.S. at 216.  Continuing, the court in Scott also relied upon the much-cited United States Supreme Court case of United States v. Morton Salt Co., 338 U.S. at 632 (1949), that strongly upheld a constitutional challenge to the Federal Trade

Commission's authority to issue subpoenas in connection with its administrative investigations. Echoing <u>Walling</u>, the United States Supreme Court in <u>Morton Salt</u> stated:

> The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. * * * (An administrative agency) has a power of inquisition, if one chooses to call it that, <u>which is not derived from the judicial function</u>. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence <u>but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not</u>.

<u>Scott</u>, 430 N.E.2d at 1020, *quoting* <u>Morton Salt Co.</u>, 338 U.S. at 642-43 (emphasis added).

Importantly, the court in <u>Scott</u>, noted:

> The foregoing decisions (referring to <u>Walling</u>, <u>Morton Salt</u>, and other cases cited therein) are still sound and set forth the appropriate standards for assessing the constitutionality of administrative investigations such as this one [by its attorney general]. The authority of the Morton Salt and Oklahoma Press Publishing decisions is unquestioned in the Federal system. <u>They have been followed by the courts of several States in upholding similar provisions for investigation in their consumer protection statutes</u>.

<u>Id.</u> at 1020 (citations omitted)(emphasis added).

Importantly, and correctly, the court in <u>Scott</u> noted when comparing the role of an attorney general to that of a regulatory agency, Grand Jury, or legislative commission (as discussed in the various United States Supreme Court cases): "An investigation by the attorney general, carrying out his enforcement responsibilities under the Act, <u>is indistinguishable</u>." <u>Id.</u> at 1020, n. 3 (emphasis added).

Numerous other courts have similarly upheld the broad powers of attorneys general to use their subpoena power when conducting administrative investigations in connection with their duty to enforce consumer protection statutes. *See, e.g.*, <u>MacFarlane v. American</u>

10

Banco Corp., 570 P.2d 825 (Colo.1977) (citing Walling, Morton Salt, and numerous other cases therein); and Com. ex rel. Hancock v. Pineur, 533 S.W.2d 527 (Ky. 1976) (strongly supporting its attorney general's authority to issue subpoenas in conjunction with administrative investigations).

CashCall's challenge to the State's subpoena on jurisdictional grounds is just another variation of the challenges that have been made and rejected by the numerous companies who have been the subject of administrative investigations throughout the country.

V.     **THE STATE'S ABILITY TO ENFORCE ITS SUBPOENA AGAINST CASHCALL HAS <u>NOT</u> BEEN TERMINATED BY THE FILING OF THIS SUIT.**

CashCall asserts in its motion to dismiss that the State's ability to enforce its investigative subpoena has been "terminated" by the filing of this suit.  CashCall provides no legal authority in support of its position because there is none.  In fact, federal courts have universally enforced subpoenas issued by state agencies that filed suits in circumstances similar to the case at bar.

When Congress has granted broad investigative powers to an agency, the courts have historically refused to limit such powers.  In Sutros Bros. & Co. v. S.E.C., Sutros argued that the SEC's investigation must conclude upon the institution of public proceedings.  The court disagreed:

> Whether to continue its investigation under Section 21(a) is a decision resting exclusively within the discretion of the Commission and not reviewed by a Court.  Not only may such investigation reveal further evidence for use in the pending proceeding, but evidence of other violations which the Commission is charged by statute with the duty to investigate. The purpose of the statute would be severely frustrated were

> the power conferred on the Commission to be terminated by
> the institution of public proceedings against one of the alleged
> violators.

Sutros Bros. & Co. v. S.E.C., 199 F. Supp. 438 (S.D.N.Y. 1961), citing S.E.C. v. Andrews

88 F.2d 441 (2d Cir. 1937) (emphasis added).  As explained below, federal courts have

consistently upheld the principle that the filing of a law suit does not terminate the agency's

investigation.

The ability of a federal agency to continue enforcement of its investigative subpoena

after the commencement of a civil complaint was upheld in two cases involving the

Resolution Trust Corporation ("RTC").  In Linde Thomson Langworthy Kohn & VanDyke,

P.C. v. Resolution Trust Corporation, 5 F.3d. 1508 (U.S. App. D.C. 1993), the RTC had

issued a subpoena duces tecum to a former law firm, Linde, Thompson, Langworthy, Kohn

& VanDyke, P.C., ("Linde Thomson"), that had numerous connections to a failed thrift.

Linde Thomson objected to the subpoena but was ordered to comply after the RTC

petitioned the district court to enforce the subpoena.  Linde Thomson appealed the order

enforcing the subpoena but, while the appeal was pending, the RTC sued Linde Thomson

and other parties in federal court, alleging fraud, breach of duty, and breath of contract.

In the appeal, Linde Thomson argued that the filing of the complaint by the RTC

terminated the investigation and rendered the subpoena enforcement proceeding moot.

In rejecting this argument, the court in Linde Thomson explained:

> We reject the argument that the investigation must terminate
> when litigation begins, because, as stated previously, we
> believe that Linde Thomson's argument is based upon a
> fundamental misconception about the scope of the RTC's
> investigation.  The clear language of the order of investigation
> leaves no room for the conclusion that this administrative
> subpoena serves no further purpose.

12

> Nor does the statute authorizing RTC investigations
> contemplate the termination of the investigative authority upon
> the commencement of a civil proceeding. Without mention of
> substantive limitation, Congress empowered the RTC to issue
> administrative subpoenas to facilitate investigations "for
> purposes of carrying out <u>any</u> power, authority or duty under the
> statute. 12 U.S.C. §§ 1818(n), 1821(d)(2)(1) (1989) (emphasis
> added). *** In this case,. . . <u>The investigative powers
> authorized by statute are unrestricted.</u> Therefore, we may, and
> do, affirm the [subpoena] enforcement order of the district
> court below.

<u>Id.</u> at 1517-18 (emphasis added).  The court in <u>Linde Thomson</u> also noted that "[s]everal

jurisdictions have employed a similar approach in enforcing administrative subpoenas after

the commencement of other proceedings." <u>Id.</u> at 1518, citing <u>United States v. Frowein</u>,

727 F.2d. 227, 231-32 (2d Cir. 1984); <u>United States v. Merit Petroleum, Inc.</u>, 731 F.2d 901,

904-05 (Temp. Emer. Ct. App. 1984); <u>In re Stanley Plating</u>, 637 F. Supp. 71, 72-73 (D.

Comm. 1986); <u>Sutros Bros.</u>, <u>supra</u>.

In the second case challenging the continued enforcement of an RTC subpoena,

the court in <u>Resolution Trust Corporation v. Walde</u>, 18 F.3d 943 (U.S. App. D.C. 1994),

held that "filing of civil charges 'in no way affects the continued vitality of the RTC's

subpoena' because ongoing investigation might reveal information to underpin further

charges." <u>Id.</u> at 950, citing <u>Linde Thomson</u>.

Courts have consistently applied this reasoning to cases involving agencies that

Congress has granted broad investigative authority.  <u>U.S. v. Clarke</u>, 2004 WL 231499

(D.Md.) (parallel proceedings by the Office of Federal Housing Enterprise Oversight

permitted when a continuing investigation is not inconsistent with action in another forum);

<u>National Labor Relations Board v. Bacchi</u>, 2004 WL 2290736 (E.D.N.Y.) (Board's

enforcement of subpoena is not moot, nor investigation terminated, upon filing civil

proceedings or an administrative complaint); National Labor Relations Board v. Alaska Pulp Corp., 1995 WL 3897229 (D.C. Cir.)(Board did not act improperly or outside its authority by choosing to issue a subpoena, when it could have requested the information through a discovery request); National Labor Relations Board v. Cable Car Advertisers, Inc., 319 F. Supp. 2d 991 (N.D. Cal. 2004)(Board's subpoena power extends to investigations before and after proceedings); Reich v. Hercules, Inc., 857 F. Supp. 367 (D.N.J. 1994)(Secretary of Labor's subpoena regarding suspected OSHA violations was not rendered moot by supervening civil proceedings considering the broad statutory authorization under the Act); U.S. v. Brendsel, 301 F. Supp. 2d 518 (E.D.Va. 2004)(Office of Federal Housing Enterprise Oversight did not act outside its authority by pursuing examinations and enforcement proceedings simultaneously – its interest in investigation and enforcement being separate and there being no statutory provisions restricting it from doing so).

In summary, CashCall's argument that the filing of this suit terminated the State's investigation is wholly without support and contrary to the strong public policy favoring continued enforcement of investigative subpoenas.

## VI. THE STATE'S ABILITY TO REQUIRE PRODUCTION OF PERSONAL IDENTIFYING AND OTHER INFORMATION ABOUT CONSUMERS FROM A CREDITOR IS NOT LIMITED BY THE MAXWELL GOVERNMENTAL ACCESS TO RECORDS ACT.

CashCall argues in its supporting memorandum of law that the Attorney General may not subpoena financial records of consumers from CashCall unless it obtains written consent for release of this information from each affected consumer, citing the Maxwell

Governmental Access Act ("Maxwell Act"), W. Va. Code § 31A-2A-1 et seq.  While this requirement may apply to some state entities, it does not apply to the Attorney General.

The Maxwell Act restricts some state entities from obtaining private customer records from financial institutions under certain circumstances.  However, the Maxwell Act does not apply when such records "may be required or permitted by any other state or federal law," W. Va. Code § 31A-2A-2(6).  As discussed herein above (Section IV., <u>supra</u>.), W. Va. Code § 46A-7-104(1) grants the Attorney General broad power to issue subpoenas if he has "probable cause to believe that a person has engaged in an act which is subject to an action by the Attorney General."  Among other things, the statute authorizes the Attorney General to "require the production of <u>any matter</u> which is relevant to the investigation. . . ." (Emphasis added.)  In addition, W. Va. Code § 46A-7-103, which establishes the division of administrative powers between the commissioner of banking and the Attorney General further provides "the Attorney General may pursue <u>any investigation, prosecute any suit and take any other proper action</u> relating to the enforcement of any consumer protection provision in this chapter." (Emphasis added.)  *See* W. Va. Code § 46A-7-103(1).

When the Maxwell Act and the pertinent provisions of the WVCCPA are read *in para materia*, it is clear that the powers granted to the Attorney General by the legislature are not subject to the restriction in the Maxwell Act for obtaining financial records of consumers that may apply to certain other state entities.

## VII.    THE STATE'S CLAIMS AGAINST CASHCALL ARE NOT PREEMPTED BY FEDERAL LAW.

CashCall argues in its motion to dismiss that the State's second through fourth causes of action should be dismissed under the doctrine of federal preemption. These claims assert that <u>CashCall</u> (not a bank) made consumer loans without a license (second cause of action); made usurious loans (third cause of action); and provided advice or assistance to consumers with regard to extensions of credit in violation of the West Virginia Credit Services Organizations Act, W. Va. Code § 46A-6C-1 et seq., ("CSO Act") (third cause of action). The State has already briefed the preemption issue exhaustively in its Remand Memorandum; thus, there is no need to repeat the argument here.

As stated therein, the State's claim that CashCall is the "de facto" lender does not present a federal question for removal purposes, nor are the State's claims preempted for purposes of this motion to dismiss. See generally, Remand Memorandum Argument III. at 5-14. As also explained therein, numerous attorneys general and other state financial services administrators have sued non-bank entities like CashCall who were engaged in similar "rent-a-bank" relationships. Although the non-bank entities (usually payday lenders) asserted federal preemption as CashCall has done here, in each case federal courts found no federal preemption and remanded the cases to state courts. As also noted, the rent-a-bank scheme has now been eliminated as a result of the collective actions of state regulatory authorities and the FDIC. *See generally*, Remand Memorandum, Argument IV. at 16-20.

In a point not previously addressed, CashCall misunderstands or exaggerates the role of the Bank Services Company Act, 12 U.S.C. § 1861, that it has cited throughout its

16

filings as it relates to federal preemption.  The State does not dispute the fact that a bank may enter into agency agreements with third parties to assist in the performance of banking duties.  See 12 U.S.C. § 1867(c).  It is also clear that when a bank elects to do so, the outside agency "shall be subject to regulation and examination . . . to the same extent as if such services were being performed by the depository institution on its own premises." Id.  However, the fact that the FDIC may exercise visitorial powers over an outside agency such as CashCall does not make the agency "like a bank" for federal preemption or any other purposes.  Moreover, the Bank Services Company Act does not state or imply that the FDIC is the sole regulator of such outside agencies to the exclusion of others.  In fact, the court rulings in the numerous rent-a-bank cases cited by the State in its Remand Memorandum state exactly the opposite.

CashCall essentially argues that it is a bank for purposes of federal preemption simply because it performs services for a bank and the FDIC may examine its activities. No court has ever so held and such a view would go against the weight of authority of the numerous courts that have already decided that non-bank entities like CashCall are not entitled to federal preemption.

In summary, CashCall is not a bank; the state did not sue a bank; and the fact that CashCall performed services for a bank under the auspices of the Bank Services Company Act does not allow CashCall to shield its activities under the doctrine of federal preemption or otherwise seek to evade regulation by the Attorney General or other state regulatory authorities.

Finally, CashCall also seeks to evade compliance with the CSO Act by arguing federal preemption (State's fourth cause of action).  This position defies the plain meaning

of the applicable laws and is contrary to the only known reported case where this question has been considered.   While denying that it is the de facto lender, CashCall has acknowledged that it "performs marketing services" for the two banks that it partnered with. See CashCall's website, www.cashcall.com/FAQ.aspx. , March 9, 2007.  These functions place CashCall squarely within the purview of the CSO Act which regulates the service of providing advise and assistance to consumers with regard to obtaining extensions of credit. In Goleta National Bank v. Lingerfelt, 211 F. Supp. 2d 711 (E. D. N. C. 2002), discussed in the State's Remand Memorandum, the court noted that even if Goleta (the bank) is the true maker of the payday loans, Ace would still have to comply with the North Carolina Loan Broker Act ("LBA"), which regulates credit services much like the CSO Act.  See Lingerfelt, 211 F. Supp. 2d at 718.  Significantly, the court in Lingerfelt pointedly found that the requirements of the LBA "do not, in any way, touch upon the NBA's [National Bank Act] sole province to regulate the interest collected by national banks.  Accordingly, Ace's preemption argument is unavailing in this instance as well." Id.

## VIII.   THE STATE'S DEBT COLLECTION CLAIMS SHOULD NOT BE DISMISSED.

Even CashCall implicitly acknowledges that the State's debt collection causes of action against CashCall (five through ten) are not subject to preemption and easily survive a motion to dismiss for failure to state a claim.  CashCall only asserts that the State's sixth cause of action (threatening to commence arbitration proceedings when it does not intend to do so) should be dismissed.  However, it is evident that CashCall does not understand this claim.  The State does not assert that CashCall violated the WVCCPA by having an arbitration clause or by threatening to commence arbitration.  CashCall's conduct

(comparable to threatening a law suit) is unlawful because it made a threat to commence arbitration that it did not intend to keep to coerce consumers to pay debts. CashCall's only possible defense to this claim is that it did commence arbitration.

The State's claim is consistent with a large body of federal cases that have found false threats of law suits to violate the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1601 et seq. Specifically, 15 U.S.C. § 1692e(5) of the FDCPA provides that a debt collector may not make a "threat to take any action that cannot legally be taken or that is not intended to be taken" (emphasis added). *See, e.g.*, Nielson v. Dickerson, 307 F.3d 623 (7th Cir. 2002); United States v. National Financial Services, Inc., 98 F.3d 131 (4th Cir. 1996); Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985). CashCall violated the WVCCPA by threatening to commence arbitration when it did not intend to do so in order to coerce consumers to pay an alleged debt.

Inasmuch as CashCall did not ask this court to dismiss the other five causes of action pertaining to its debt collection practices, the State need not address them here. It is pertinent to note, however, that all of the debt collection conduct occurred while CashCall was undisputedly the sole owner of the accounts in question. Accordingly, CashCall must defend these claims on the merit of its conduct and cannot assert the shield of federal preemption.

19

## IX.   CONCLUSION

Wherefore, for the reasons set forth herein above, the State respectfully requests that this court deny CashCall's motion to dismiss, or, in the alternative, that the court defer to the state court for ruling on the motion to dismiss after remand.

STATE OF WEST VIRGINIA ex rel.
DARRELL V. McGRAW, JR.,
ATTORNEY GENERAL, Plaintiff

By Counsel

/s/ NORMAN GOOGEL (WV State Bar #1438)
ASSISTANT ATTORNEY GENERAL
Post Office Box 1789
Charleston, West Virginia 25326-1789
Telephone: 304-558-8986
Email: nag@wvago.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

STATE OF WEST VIRGINIA ex rel.
DARRELL V. MCGRAW, JR.,
ATTORNEY GENERAL,

        Plaintiff,

v.

CASHCALL, INC., and
J. PAUL REDDAM, in his capacity as
President and CEO of CashCall, Inc.,

        Defendants.

Civil Action No.: 2:08-cv-01292
Judge Joseph R. Goodwin

## CERTIFICATE OF SERVICE

I, Norman Googel, counsel for Plaintiff, do hereby certify that on December 22, 2008, I electronically filed the foregoing Memorandum of Law in Support of Motion to Remand with the Clerk of the Court using the CM/ECF system, and the following counsel has been served accordingly:

Bruce M. Jacobs, Esquire
Charles L. Woody, Esquire
Alexander Macia, Esquire
Spilman Thomas & Battle, PLLC
PO Box 273
Charleston, West Virginia  25321
*Via ECF System*

Eric N. Whitney, Esquire
J. Scott Sheehan, Esquire
Leah Edmunds, Esquire
Greenberg Taurig, LLP
MetLife Building
200 Park Avenue
New York, NY  10166
*Via United States Mail*

/s/ NORMAN GOOGEL #1438
Consumer Protection/Antitrust Division
812 Quarrier Street, 1st Floor
Charleston, West Virginia 25301
(304) 558-8986