IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**STATE OF WEST VIRGINIA ex rel.**
**DARRELL V. McGRAW, JR.,**
**ATTORNEY GENERAL,**

     Plaintiff,

v.                                            Civil Action No. 2:08-cv-01292
                                              Judge Joseph R. Goodwin

**CASHCALL, INC., and**
**J. PAUL REDDAM, in his capacity as**
**President and CEO of CashCall, Inc.,**

     Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF**
**OPPOSITION TO STATE'S MOTION TO REMAND**

**INTRODUCTION**

     Defendant CashCall, Inc. ("CashCall") hereby submits this memorandum of law in opposition to the State of West Virginia, ex rel. Darrell V. McGraw, Jr., Attorney General (the "Attorney General")'s Memorandum of Law in Support of Motion to Remand ("Remand Br."). In support of his Motion to Remand, the Attorney General relies exclusively on the well-pleaded complaint rule, ignoring the complete preemption doctrine, which is an independent corollary to the well-pleaded complaint rule.  Under the complete preemption doctrine, if an area of state law is completely preempted, any claim purportedly based on that state law is treated as a federal claim for the purposes of establishing federal jurisdiction, regardless of how the original complaint was crafted by the plaintiff.

     The United States Supreme Court ruled that the National Bank Act completely preempts state usury claims as applied to national banks.  Similarly, the United States Court of Appeals for

the Fourth Circuit held that the Federal Depositors Insurance Act completely preempts state usury claims as applied to state-chartered banks. The Fourth Circuit further held that state usury claims brought against non-bank agents of state-chartered banks are also completely preempted by federal statutes. CashCall demonstrated in both its Memorandum of Law in Support of Defendant CashCall's Motion to Dismiss ("Dismiss Br.") and the Reply Memorandum of Law in Support of Defendant CashCall's Motion to Dismiss ("Reply Br.") that First Bank and Trust of Milbank (the "Bank") is the real lender in its relationship with CashCall, and CashCall is the Bank's marketing agent. Therefore, under Fourth Circuit law, the Attorney General's state usury claims directed at CashCall actually apply to the Bank and are therefore completely preempted by federal statute. As such, this Court has federal jurisdiction over the claims contained within the Complaint for Injunction, Consumer Restitution, Civil Penalties, and other Appropriate Relief (the "Complaint") and the Attorney General's Motion to Remand should be denied.

## ARGUMENT

**I.   THE DOCTRINE OF COMPLETE PREEMPTION ESTABLISHES FEDERAL JURISDICTION OVER THE CLAIMS BROUGHT AGAINST CASHCALL**

### A.   The Attorney General Failed to Address the Complete Preemption Doctrine

In the Motion to Remand, the Attorney General relies on the well-pleaded complaint rule to support his claim that this Court lacks federal jurisdiction over the causes of action listed in the Complaint. (Remand Br. at 2.) According to the Attorney General, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint," and the plaintiff, as "master of the claim," may "avoid federal jurisdiction by exclusive reliance on state law." *Id*. Yet the Attorney General disregards the "independent corollary to the well-pleaded complaint rule, known as the 'complete preemption' doctrine." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). Under the doctrine of complete

preemption, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.*; *see also Franchise Tax Board of State of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 24 (1983) ("[I]f a federal cause of action completely preempts a state case of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law.")

      **B.**    **The Complete Preemption Doctrine Provides a Basis for Federal Jurisdiction Over State Law Claims**

In a recent decision, the United States Court of Appeals for the Fourth Circuit explained the effect of complete preemption on federal jurisdiction. "Although generally a case may not be removed to federal court solely because of a defense or counterclaim arising under federal law, *complete* preemption is an exception to this rule and so federal jurisdiction is proper, even though the preemption is only raised as a defense." *Discover Bank v. Vaden*, 489 F.3d 594, 599 (4th Cir. 2007). Even cases cited by the Attorney General in the Motion to Remand acknowledge that complete preemption provides a basis for federal jurisdiction over state law claims. *See Flowers v. EZPawn Oklahoma, Inc.*, 307 F. Supp. 2d 1191, 1202 (N.D. Okla. 2004) (noting that since "[c]omplete preemption is jurisdictional rather than an affirmative defense … the doctrine allows removal even if the complaint is artfully pled to include only state law claims." (citation omitted)); *State of Colorado ex rel. Salazar v. Ace Cash Express, Inc.*, 188 F. Supp. 2d 1282, 1284 (D. Colo. 2002) ("Under the doctrine of complete preemption, a complaint that alleges only state law causes of action may be removed when the state claims necessarily invoke federal law."); *Scott v. Griene*, 858 F. Supp. 607, 609 n.1 (S.D.W. Va. 1994) ("There are exceptions to the well-pleaded complaint rule: where 'complete' preemption by federal law exists, or where the plaintiff seeks to conceal the true federal nature of his claim through 'artful

3

pleading,' the court will look beyond the complaint to determine whether a federal question persists precluding remand." (citations omitted)).

### C. Both National and State-Chartered Banks Are Subject to Federal Statutes That Completely Preempt State Usury Law

The Supreme Court recently held that a national bank was subject to a federal statute that completely preempted state usury laws and therefore, removal to federal court was appropriate. In *Beneficial National Bank v. Anderson*, the Supreme Court examined whether the National Bank Act completely preempted Alabama usury laws as applied to national banks.  539 U.S. 1 (2003).  The Court determined that "[i]n actions against national banks for usury, [ ] provisions [of the National Bank Act] supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state law." *Id* at 11.  As a result, the Supreme Court reversed an Eleventh Circuit decision remanding the case to state court. *Id*.

Similarly, the Fourth Circuit in *Vaden* confirmed that state-chartered banks are subject to federal regulations that completely preempt state usury laws.  489 F.3d at 598  In *Vaden*, the Fourth Circuit considered whether the Federal Depositors Insurance Act ("FDIA") completely preempted Maryland usury laws, thus validating removal to federal court. *Id*.  The court concluded that "given the express preemption language of the FDIA, the statute's legislative history affirming Congress' intent to provide competitive equality between national and state-chartered banks, the virtual identity of the preemption language in the NBA and the of the FDIA, and the Supreme Court's finding of complete preemption under the NBA [in *Beneficial*], we are hard pressed to conclude other than that *Congress intended complete preemption of state-court usury claims under the FDIA*." *Id*. at 606 (emphasis added).  The Third Circuit recently made a similar ruling regarding complete preemption as applied to state-chartered banks. *See In re*

*Cmty. Bank of N. Va.*, 418 F.3d 227, 295 (3d Cir. 2005) (holding that section 1813d(a) of the FDIA "completely preempts any state law attempting to limit the amount of interest and fees a federally insured, state-chartered bank can charge.").

      **D.**      **The Bank, as the True Lender, is Subject to Federal Statutes that Completely Preempt State Usury Claims Against CashCall**

Federal case law establishes that state usury laws directed at agents of state-chartered banks, like CashCall, are preempted by federal statutes. *See* Dismiss Br. at 11-16; Reply Br. at 4-6. The Fourth Circuit in *Vaden,* having found that federal statutes completely preempt state usury laws as directed towards state-chartered banks, next analyzed whether the state claims directed at Discover Bank's servicing agent were completely preempted. 489 F.3d at 601. The Court found that Discover Bank, a state-chartered bank, "was the real party of interest with respect" to state usury claims. *Id*. at 603. Therefore, the state usury claims brought against Discover Bank's servicing agent were "completely preempted by the FDIA" and the Court had proper federal jurisdiction to determine the applicability of a arbitration clause at issue in the dispute. *Id*. at 606; *see also Republic Bank & Trust Co. v. Kucan*, 245 Fed.Appx. 308, 313 (4 Cir. 2007) ("*Vaden II* thus establishes that usury claims against state-chartered banks are completely preempted by the FDIA, and that such claims that are nominally asserted against a non-bank are preempted if a state-chartered bank in fact is the real subject of the claims asserted by the plaintiffs.") CashCall has previously established that since the bank underwrites, approves and funds the loans that CashCall markets, under federal law, the Bank is the true lender in its relationship with CashCall. (Dismiss Br. 8-11; Reply Br. 3-7.) Therefore, according to Fourth Circuit law, federal banking statutes completely preempt the state usury claims brought against CashCall and this Court has federal jurisdiction over the dispute.

The Attorney General contends, based in part on the courts reasoning in *Vaden*, that determining the true lender in an agreement between a bank and a marketing agent requires a factual analysis that is best left to state courts. (Remand Br. at 14.) This argument is flawed for several reasons. First, as discussed below, none of the cases cited by the Attorney General establishes that state courts are in the best position to identify the true lender in an agreement between a bank and a marketing agent. *See infra* Part I.E. Second, *Vaden* does not hold that the true lender in an agreement between an out-of-state bank and an in-state agent automatically requires a complex factual analysis. 489 F.3d at 601. Third, in *Vaden*, the Fourth Circuit, having determined that a factual analysis was necessary under the particular circumstances of that case, initially remanded the proceeding to <u>federal</u> district court, rather than <u>state</u> court, to make a determination as to whether Discover Bank was the real lender. *Id*. at 597.

### E. The Cases Cited by the Attorney General Do Not Support the Motion to Remand

CashCall established in the Reply Brief in support of its Motion to Dismiss that the payday lending cases cited by the Attorney General in the Motion to Remand (as well as, in part, in the Attorney General's Opposition to the Motion to Dismiss) are inapposite to the instant case and do not bar federal preemption of the West Virginia lending laws relied upon by the Attorney General. (Reply Br. at 7-11). CashCall specifically noted that the payday lending cases, often at completely different procedural stages than the instant case, also involved short term secured "payday" loans that are completely different from the long term, unsecured loans marketed by CashCall.[1] *Id*. Indeed, the Attorney General concedes that "the loans offered by CashCall are installment loans as opposed to payday loans." (Remand Br. at 18.) The payday-lending-specific cases cited by the Attorney General are also insufficient to support a motion to remand.

---

[1] One important difference between the loans CashCall markets and the payday lender loans is that the loans marketed by CashCall can be prepaid without penalty at any time whereas with payday loans, borrowers pay all the interest up front no matter how long they keep the loan.

6

As an initial point, none of the payday lending cases cited by the Attorney General are from the Fourth Circuit and therefore, none of them have binding authority on the instant case. Furthermore, the cases the Attorney General cited that consider whether to grant motions to remand employ a method of analysis that the Fourth Circuit in *Vaden* expressly rejected. Namely, these courts failed to look past the named parties in the complaints in order to determine the "real party of interest with respect" to the state usury claims. *Vaden*, 489 F.3d at 603; *see, e.g.*, *Salazar*, 188 F. Supp. 2d at 1283, 1285 (District of Colorado case considering collateral estoppel in determining whether to remand in a case involving a payday lender with loose affiliations with a national bank); *Flowers*, 307 F. Supp. 2d. at 1196 (Oklahoma federal case determining whether to remand class action against pawn shop; court held complete preemption doctrine did not apply where pawn shop did not provide support for its assertion that bank was true lender). Therefore, the cases cited by the Attorney General that granted motions to remand are based on a method of analysis the Fourth Circuit has explicitly rejected. The remaining cases cited by the Attorney General in support of the motion to remand are inapposite to the instant case and should be disregarded as such.

In *Goleta National Bank v. Lingerfelt*, for example, the court considered whether the *Younger* abstention doctrine[2] barred the court from intervening on behalf of Goleta National Bank in a state court proceeding involving Ace, a payday lender. 211 F. Supp. 2d 711 (E.D.N.C. 2002). The *Lingerfelt* court's statement that "state courts are perfectly capable of resolving cases of federal law," quoted by the Attorney General, actually referred to one of the three elements of the *Younger* abstention doctrine and has no bearing on whether removal is appropriate under the

---

[2] The *Younger* abstention doctrine was derived from the Supreme Court decision in *Younger v. Harris*, 401 U.S. 37 (1971). The *Younger* abstention doctrine "counsels against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." *Moore v. Sims*, 442 U.S. 415, 423 (1979). The *Younger* abstention doctrine analysis is completely separate from the analysis involved in determining whether to grant a motion to remand.

complete preemption doctrine.  Remand Br. at 7; *Id*. at 715-16.  Furthermore, the *Lingerfelt* court did not, as the Attorney General suggests, conclude that "a state's claims that a non-bank entity is the de facto lender is a proper inquiry that presents a factual dispute to be resolved by the state trial courts."  (Remand Br. at 7.)  Rather, because there was disagreement about whether the bank was the de facto lender, the court found that abstention under the *Younger* doctrine was appropriate because Goleta's National Bank Act preemption claim was not facially conclusive.  211 F. Supp. 2d at 718.  As such, the court's conclusions in *Lingerfelt* in no way suggest that this Court lacks federal question jurisdiction over the claims presented in the complaint or that state courts must exclusively resolve issues surrounding the identity of the lender in interest.

Similarly, in *Goleta National Bank v. O'Donnell*, also involving plaintiff Goleta and payday lender Ace, the Ohio Department of Commerce asserted Goleta's lack of standing to intervene in a state proceeding and the court agreed.  239 F. Supp. 2d 745, 750 (S.D. Ohio 2002).  The court did not address the issue of complete preemption as applied to Ace, nor did it consider whether removal to federal court was proper.  Moreover, at no time did the court in *O'Donnell* acknowledge, as the Attorney General contends, that the issue of the identity of the true lender in an agreement between a bank and a non-bank "does not present a federal question for removal purposes."  (Remand Br. at 8.)  The court's observation that the Ohio administrator's case "is brought only against Ace and is predicated only on state law," as cited by the Attorney General, relates solely to Goleta's standing as an intervener and was not meant to address the issue of preemption.  Remand Br. at 8;  239 F. Supp. 2d at 757.

Finally, in *Bankwest, Inc. v. Baker*, the court interpreted a Georgia law precluding agency agreements between in-state payday stores and out-of-state banks when the in-state payday stores retained the predominant economic interest in the loans they marketed.  411 F.3d 1289, 1292-93 (11th Cir. 2005).  At no time did the court in Bankwest seek to determine whether a particular

8

payday lender held a predominant economic interest in a loan. Nor did the court address the issue of whether federal question jurisdiction exists based on the complete preemption of state usury laws as applied to state-chartered banks through nominal claims brought against the bank's agents. Nor was the issue of removal even raised. Furthermore, the dissent in Bankwest gave a particularly scathing critique of the court's predominant economic interest analysis, arguing that the State of Georgia and the majority circumvented congressional intent through a narrow interpretation of the National Bank Act. 411 F.3d at 1315.

The Attorney General has not successfully challenged CashCall's extensive proof that federal question jurisdiction exists regarding the Attorney General's claims based on state usury laws and therefore, the Attorney General's Motion to Remand should be denied.

## CONCLUSION

As set forth above, CashCall has clearly established that the Court has federal question jurisdiction and therefore, removal was proper under 28 U.S.C. §§ 1331 and 1441(b). As a result, the Attorney General's Motion to Remand should be denied.

**CASHCALL, INC.**

**By Spilman Thomas & Battle, PLLC**

 /s/ Bruce M. Jacobs
Charles L. Woody (WV State Bar No. 4130)
Bruce M. Jacobs (WV State Bar No. 6333)
Alexander Macia (WV State Bar No. 6077)
PO Box 273
Charleston, WV  25321-0273
304.340.3800
304.340.3801 (*facsimile*)

<strong>IN THE UNITED STATES DISTRICT COURT FOR THE<br>SOUTHERN DISTRICT OF WEST VIRGINIA<br>AT CHARLESTON</strong>

**STATE OF WEST VIRGINIA ex rel.
DARRELL V. McGRAW, JR.,
ATTORNEY GENERAL,**

   Plaintiff,

v.             **Civil Action No. 2:08-cv-01292**
                Judge Joseph R. Goodwin

**CASHCALL, INC., and
J. PAUL REDDAM, in his capacity as
President and CEO of CashCall, Inc.,**

   **Defendants.**

## CERTIFICATE OF SERVICE

I, Bruce M. Jacobs, counsel for CashCall, Inc., do hereby certify that on January 23, 2009, I electronically filed the foregoing **Memorandum of Law in Support of Opposition to State's Motion to Remand** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Norman Googel, Esquire
> Assistant Attorney General
> Office of the Attorney General
> 812 Quarrier Street
> Charleston, WV  25326-1789
> *Counsel for Plaintiff*

>  /s/ Bruce M. Jacobs
> Charles L. Woody (WV State Bar No. 4130)
> Bruce M. Jacobs (WV State Bar No. 6333)
> Alexander Macia (WV State Bar No. 6077)
> Spilman Thomas & Battle, PLLC
> PO Box 273
> Charleston, WV  25321-0273
> 304.340.3800
> 304.340.3801 (*facsimile*)