IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

STATE OF WEST VIRGINIA, et al.,

        Plaintiffs,

v.                             CIVIL ACTION NO.  2:08-cv-01292

CASHCALL, INC., et al.,

        Defendants.

**ORDER**

Pending before the court is Defendant CashCall's Motion to Dismiss [Docket 7], and the plaintiff's Motion to Remand [Docket 14].  For the reasons herein, the plaintiff's Motion is **GRANTED** and Defendant CashCall's Motion is **DENIED as moot**.

**I.**      **Background**

On October 8, 2008, the State of West Virginia ("the State") filed a Complaint against the defendants, CashCall, Inc. ("CashCall"), and J. Paul Reddam, in the Circuit Court of Kanawha County, West Virginia.  (Notice Removal, Ex. A [Docket 1].)  In that Complaint, the State alleges, among other things, that CashCall participated in an alleged "rent-a-bank" or "rent-a-charter" scheme designed to avoid West Virginia usury laws.  The so-called "scheme" entailed CashCall's entry into a Marketing Agreement (the "Agreement") with a bank chartered in South Dakota, the First Bank and Trust of Milbank ("the Bank").  The Agreement provided that CashCall would market loans to consumers as an agent of the Bank.  The Bank would then approve and directly fund the loans.  Three business days later, CashCall would, pursuant to the Agreement, purchase the loan

from the Bank and become the owner of the loan. The State argues that CashCall's overall involvement with those loans rendered it the de facto lender of the loans and that the interest rates charged on those loans exceed the amount allowed by West Virginia usury laws.

On November 17, 2008, CashCall removed this action to federal court[1] and the State subsequently filed a Motion to Remand [Docket 14]. CashCall has also filed a Motion to Dismiss [Docket 7]. In that motion, CashCall argues that the State's First, Second, Third, Fourth and Sixth Causes of Action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Both the State's Motion to Remand and CashCall's Motion to Dismiss are ripe for review.

## II.     Motion to Remand

In its Notice of Removal, CashCall asserts that this court has federal question jurisdiction over this matter by virtue of the complete preemption doctrine. Specifically, CashCall argues that the Bank is the real party in interest with respect to the State's claims, "each and every [one of which] concerns consumer loans made in West Virginia by the Bank." (Notice Removal ¶ 13.) (emphasis in the original). Because the Bank is the real lender, CashCall argues, the State's usury law claim is completely preempted by § 27 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1831d. The State responds that its Complaint only raises state law claims against CashCall, which is not a bank. Therefore, the State argues, the claims do not raise a federal question establishing federal subject matter jurisdiction and removal of this case to federal court was improper. (State's Mem. Supp. Mot. Remand 1 [Docket 15].) I **FIND** that because the State only asserts state law claims against CashCall, a non-bank entity, the claims do not implicate the FDIA,

---

[1]     Defendant J. Paul Reddam was not served in this action and did not consent to removal. (Notice Removal ¶ 10.)

the FDIA does not completely preempt the state-law claims, and there are no federal questions on the face of the Complaint. Accordingly, the State's Motion to Remand is **GRANTED**.

      **A.**      **Complete Preemption Doctrine**

A defendant may remove to federal court any case filed in state court over which federal courts have original jurisdiction. 28 U.S.C. § 1441. Federal courts have original jurisdiction over all civil actions arising under the laws of the United States. 28 U.S.C. § 1331. An action arises under the laws of the United States if a federal claim or question appears on the face of a well-pleaded complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

The well-pleaded complaint rule limits a defendant's ability to remove a case involving federal questions because it allows removal only if "the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S.Cal.*, 463 U.S. 1, 10 (1983) (footnote omitted; emphasis in original).[2] In other words, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action" before removal can occur. *Id.* at 10-11 (quoting *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936)). Further, an action cannot be removed to federal court based upon "a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Id.* at 14; *see also Caterpillar*, 482 U.S. at 393.

---

      [2]      Superseded by statute on other grounds as stated in *Department of Revenue of Iowa v. Investment Finance Management Co.*, 831 F.2d 790, 792 (8th Cir. 1987).

The complete preemption doctrine is an "independent corollary of the well-pleaded complaint rule." *Caterpillar*, 482 U.S. at 393. As explained by the United States Supreme Court, the doctrine of complete preemption applies when the preemptive force of a federal statute is so "extraordinary" that it converts a complaint solely asserting state law claims into one raising a federal question and satisfying the well-pleaded complaint rule. *Id.* Thus, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.*

**B.     The State's Usury Law Claim Against CashCall is Not Completely Preempted**

The complete preemption question in this case involves § 27 of the FDIA.[3] Section 27 allows a state-chartered bank to charge interest rates permitted in its home state on loans made outside of its home state, even if the interest rate would be illegal in the state where the loan is made.[4] 12 U.S.C. § 1831d(a). Therefore, state usury laws establishing maximum permissible interest rates do not apply to loans made by out-of-state banks. *Id.* In *Discover Bank et al. v. Vaden*, 489 F.3d 594, 603-04 (4th Cir. 2007), *rev'd on other grounds,* 556 U.S. ____, No. 07-773 (U.S. Mar.

---

[3]     CashCall discusses several other theories of preemption in its Notice of Removal and its Motion to Dismiss. (*See* Notice Removal ¶¶ 14-15; CashCall Mem. Supp. Mot. Dismiss 8-17 [Docket 8].) As discussed above, however, an action may not be removed based on the federal defense of preemption. *See Franchise Tax Bd. of Cal.*, 463 U.S. at 14. Therefore, CashCall has presented only one viable ground for removal and that is complete preemption based on § 27 of the FDIA.

[4]     12 U.S.C. § 1831d(a) states in relevant part:

In order to prevent discrimination against State-chartered insured depository institutions . . . such State bank or such insured branch of a foreign bank may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made . . . at the rate allowed by the laws of the State, territory, or district where the bank is located, whichever may be greater.

9, 2009), the Fourth Circuit held that § 27 of the FDIA completely preempts state usury law claims against state-chartered banks.[5]

In this case, the State asserts a usury law claim against CashCall, a non-bank entity. The State alleges that "[t]he relationship between CashCall and the Bank was a sham intended to circumvent the usury and consumer protection laws of West Virginia," and that "CashCall made 'usurious loans,' in violation of [West Virginia law]." (*Id.*, Ex. A ¶¶ 82, 84). The FDIA does not apply to non-bank entities. *Vaden*, 489 F.3d at 601 n.6. Thus, on its face, the Complaint does not state any usury law claims against a state-chartered bank that would implicate the FDIA and be completely preempted.

Nevertheless, courts addressing the complete preemption question with respect to state usury law claims have found it necessary to determine whether the claims were actually directed against a federally or state-chartered bank. *See In re Cmty. Bank of N. Va. et al.*, 418 F.3d 277, 296 (3d Cir. 2005) ("[W]e must examine the . . . complaint to determine if it alleged state law claims of unlawful interest by a nationally or state chartered bank); *Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 924 (8th Cir. 2000) ("[T]he question of complete preemption in this case turns on whether appellants' suit against the [non-bank] store actually amounted, at least in part, to a state usury claim against

---

[5] The principle question in *Vaden* was whether the district court had jurisdiction over plaintiff's petition to compel arbitration of the defendant's counterclaims pursuant to § 4 of the Federal Arbitration Act, 9 U.S.C. § 4. *Vaden*, 489 F.3d at 597. The Fourth Circuit held in the affirmative based on § 27's complete preemption of the counterclaims. *Id.* at 608. The Supreme Court vacated that decision on the grounds that a federal court "may not entertain a § 4 petition based on the contents, actual or hypothetical, of a counterclaim." *Vaden v. Discover Bank et al.*, No. 07-773, slip op. at 11 (U.S. Mar. 9, 2009). The Court did not, however, address the question of complete preemption with respect to § 27 of the FDIA. Accordingly, the Fourth Circuit's holding on that issue remains intact and is the only part of *Vaden* that is relevant to the instant matter.

the bank.").[6] Courts evaluating the removal of state usury law claims similar to those in this case have found that the claims were directed only against the non-bank entity, rather than the bank, and that the claims were not completely preempted. For example, in *Colorado ex rel. Salazar v. Ace Cash Express, Inc.*, 188 F. Supp. 2d 1282 (D. Colo. 2002), the plaintiff alleged that the defendant was an unlicensed supervised lender charging excessive and improper fees in violation of state law. *Id.* at 1284. The defendant removed the action on the grounds that it operated as an agent for a national bank and therefore the claims were completely preempted by the National Bank Act ("NBA"), 12 U.S.C. § 85.[7] *Id.* The district court found that removal was improper because the defendant was a separate entity from the bank and the plaintiff alleged no claims against the bank. *Id.* at 1285.

Similarly, in *Flowers v. EZPawn Oklahoma, Inc.*, 307 F. Supp. 2d 1191 (N.D. Okla. 2004), the plaintiff brought a class action law suit based on claims of usury and fraud. *Id.* at 1196. The plaintiff alleged that the defendants charged interest rates on payday loans in excess of those permitted by Oklahoma usury laws and that they had entered into a "sham" relationship with a state-

---

[6] In *Vaden*, the Fourth Circuit called this inquiry as a "real party in interest" analysis. *Vaden*, 489 F.3d at 601. I disagreed with that characterization of the inquiry and its application in that case. *Id.* at 610 n.4. Nevertheless, an inquiry into the true target of a claim is appropriate in this case where the analysis involves the complete preemption of claims brought by the plaintiff in the original Complaint.

[7] The National Bank Act ("NBA") uses language almost identical to § 27 of the FDIA to allow national banks to charge interest rates permitted in their home state on loans made in other states. Section 85 of the NBA states:

> Any association may take, receive, reserve, and charge on any loan or discount made . . . interest at the rate allowed by the laws of the State, Territory, or District where the bank is located . . . .

12 U.S.C. § 85.

chartered, federally insured bank, "for the purpose of claiming federal preemption and evading usury, fraud and protection laws." *Id.* at 1196. The defendants argued that they acted as "servicers for the loan made by . . . a Delaware-chartered, federally insured bank. And as [the] Bank [was] the lender, federal banking law and not Oklahoma law govern[ed] the legality of interest rates." *Id.* Following the guidance of *Salazar*, the district court found that the plaintiff only asserted claims against non-bank defendants, which were separate entities from the state-chartered bank, and therefore, the district court had no subject matter jurisdiction over the claims. *Id.*

Also, in *In re Community Bank of Northern Virginia et al.*, 418 F.3d 277 (3d Cir. 2005), the plaintiffs brought a class action against a non-bank entity for originating "bogus" loans and charging illegal fees. *Id.* at 285. The defendant was involved in an alleged conspiracy with a state-chartered bank and a nationally-chartered bank to avoid state usury laws. *Id.* at 284. The banks, however, were not named in the original complaint. The Third Circuit held that the complaint only asserted claims against the non-bank defendant and because the non-bank defendant was a completely separate entity from the two banks, the state law usury claims could not be preempted by the NBA or FDIA. *Id.* at 297.

The state usury law claim in the instant matter strongly resembles those in *Salazar*, *Flowers*, and *Community Bank*. Like the plaintiffs in those cases, the State has only asserted state claims against a non-bank entity—CashCall. Further, CashCall and the Bank are completely separate entities. *See* Notice Removal, Ex. A at Ex. E § 11.8. The presence of such factors in the three cases discussed above led to a determination by those courts that the state usury law claims were not completely preempted despite the defendants' status as agents of nationally or state-chartered banks.

The presence of the same factors in this case support a conclusion that the usury law claim is directed only against CashCall.

The Complaint as a whole provides further support that the usury claim is directed against CashCall, rather than the Bank. The ten causes of action in the Complaint allege that CashCall violated a large number of West Virginia consumer protection laws. The totality of the Complaint shows that the State's suit is directed against a single, specific entity violating a host of state laws including the usury law—that entity is CashCall, not the Bank.

Further supporting that conclusion is the absence of any indication that the State artfully pled its claims against CashCall, rather than the Bank, to thwart federal question jurisdiction and Congressional intent. *See Phipps v. FDIC*, 417 F.3d 1006, 1011 (8th Cir. 2005) (requiring courts applying the complete preemption doctrine to "look beyond the plaintiffs' artful attempts to characterize their claims to avoid federal jurisdiction"). The claims in this case are limited to CashCall's conduct and do not implicate the Bank's rights under the FDIA. The State does not dispute that the Bank, as a South Dakota-chartered bank, may make loans in West Virginia and charge interest rates permitted in South Dakota. (State's Mem. Supp. Mot. Remand 3.) Further, the Complaint does not target such loans and charges by the Bank. The Complaint does target, however, loans and interest charges allegedly made by CashCall. If CashCall is found to be a de facto lender, then CashCall may be liable under West Virginia usury laws. A contrary determination that CashCall is not a real lender will not result in the Bank's liability or regulation under state laws, but will merely relieve CashCall of liability under those laws. *Cf. Goleta Nat'l Bank v. O'Donnell*, 239 F. Supp. 2d 745, 756 (S.D. Ohio 2002). Thus, an adjudication of the usury claim in this matter will not affect the Bank's rights to make loans and charge FDIA-permitted interest rates in West

Virginia.  *Cf. Goleta Nat'l Bank v. Lingerfelt*, 211 F. Supp. 2d 711, 719 (E.D.N.C. 2002); *O'Donnell*, 239 F. Supp. 2d at 755-56.

CashCall mistakenly argues that the complete preemption of § 27 necessarily applies to the State's usury law claim because the Bank is the real lender in the relationship.  (CashCall's Mem. Supp. Opp'n State's Mot. Remand 2, 5.)  It is true that in some cases, courts have found that state usury law claims nominally directed against a non-bank entity were actually directed against a related bank and thus were completely preempted by the FDIA or NBA.  *See Vaden*, 489 F.3d at 603; *Krispin*, 218 F.3d at 924.[8]  But those cases are distinguishable from this one.  First, there was no question in *Vaden* and *Krispin* that the state-banks controlled the allegedly usurious charges.  *See Vaden*, 489 F.3d at 603 (emphasizing the fact that the bank set the interest rates being challenged); *Krispin*, 218 F.3d at 924 (finding that the bank set the fees being challenged).  In this case, the State alleges that CashCall is the de facto lender and there is a factual question as to the identity of the true lender.[9]  Second, the state-banks and agents in *Vaden* and *Krispin* were related either through an indemnity agreement or through their corporate structure.  *See Vaden*, 489 F.3d at 602-03 (explaining that the bank agreed to indemnify the agent from damages caused by the bank, including its violation of state and federal laws); *Krispin*, 218 F.3d at 923 (explaining that the bank was a

---

[8] Though I disagreed with the Fourth Circuit's inquiry into the target of the defendant's counterclaims in *Vaden*, I discuss their analysis in that case to the extent it provides guidance about the FDIA's complete preemption of state usury law claims.

[9] I cannot determine which entity is the true lender based on th record before the court. Therefore, even assuming that the Bank's definite status as the true lender would be dispositive of the complete preemption question, CashCall has not sustained its burden of establishing that fact. *See Mulcahey v. Columbia Organic Chems. Co., Inc.,* 29 F.3d 148, 151 (4th Cir. 1994) (explaining that the defendant bears the burden of establishing federal jurisdiction).

wholly-owned subsidiary of the servicing agent). In contrast, CashCall and the Bank are completely separate entities. *See* Notice Removal, Ex. A at Ex. E § 11.8.

Finally, the character of the complaints in *Vaden* and *Krispin* contrast sharply with the complaint in this case. The plaintiffs in the former cases were seeking damages caused by usurious fees. In such cases, the fact that a state-chartered bank may be the true lender of the loans may bear some weight in the complete preemption analysis because monetary recovery is sought from the responsible entity, which may be the bank. In this case, however, the attorney general of the State of West Virginia is seeking relief from the harmful conduct of a *specific entity*—CashCall. This broad objective is evident in the Complaint. Where, as here, a lawsuit is directed at the usurious conduct of a *specific non-bank entity* that does not benefit from the privileges conferred by the FDIA, the fact that a state-chartered bank might be the true lender responsible for allegedly usurious loans is less significant. This is because the bank is not the targeted entity and cannot provide the sought relief even if it turns out to be the real lender; the non-bank entity would remain the target.

Ultimately, as expressed in *Salazar*, CashCall "confuses what this case *is* and is *not* about. The Complaint *strictly* is about a non-bank's violation of *state* law. It alleges *no* claims against a [*state-chartered*] *bank* under the [*FDIA*]." *Salazar*, 188 F. Supp. 2d at 1285 (internal quotations omitted) (emphasis in the original). I **FIND** that the State's usury law claim is directed against CashCall, which is not a bank, and therefore, the claim does not invoke and cannot be completely preempted by the FDIA. Accordingly, I **FIND** that the State's Complaint does not raise any federal questions on its face and that this court does not have subject matter jurisdiction over this case.

### III. Conclusion

As discussed above, this court does not have subject matter jurisdiction over the instant matter. Accordingly, I **GRANT** the State's Motion to Remand [Docket 14] and **ORDER** this case remanded to the Circuit Court of Kanawha County, West Virginia. Further, I **DENY as moot** CashCall's Motion to Dismiss [Docket 7].

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 11, 2009

*Joseph R. Goodwin*
Joseph R. Goodwin, Chief Judge